DOTY
v.
TURNER.

DOTY *against* TURNER, late Sheriff of Rensselaer.

The agent of the plaintiff delivered an execution to a sheriff, and directed him to levy it on the property of the defendant, but said to the sheriff that he supposed the plaintiff did not wish to distress the defendant, and that if the property remained in the possession of the defendant after the levy, the plaintiff would not hold the sheriff responsible, if it was squandered, and that he need not take a receipt for it. The sheriff, after levying on the goods of the defendant, did nothing further, until after the execution had expired, and a second execution was delivered to him, when he sold the property on both executions. It was held, that as there were no instructions from the plaintiff to delay the execution, after the seizure, nor any agreement between the plaintiff and the defendant to let the

THIS was an action of *assumpsit.* The declaration contained two counts. 1. That the defendant, being indebted to the plaintiff for 200 dollars, collected and received by the defendant, on a *fieri facias* issued out of this court, at the suit of the plaintiff, against the goods and chattels of *John Pierce,* tested, &c. on a judgment, &c. and being so indebted, the defendant assumed and promised, &c. 2. For money had and received to the use of the plaintiff. Plea, *non assumpsit.*

The cause was tried at the *Rensselaer* circuit, in 1810, before Mr. Justice *Van Ness.*

The plaintiff gave in evidence the record of the judgment and the *fieri facias,* on which was the following endorsement: "This execution was delivered into the sheriff's office, on the 2d *June,* 1808. The person who delivered it, a partner of the attorney for the plaintiff, said that the plaintiff, he supposed, did not wish to distress the defendant, but wished a levy to be made, so as to secure the debt, and give no other execution the preference; that if the sheriff permitted the property to remain in the possession of the defendant, he would not consider the sheriff responsible, in case it was squandered; that he need not take a receipt. Levy was made on the execution; and nothing more done, or any further instructions given, until after the return day of this execution, nor till after the receipt of another *fieri facias* against the said defendant, at the suit of *Calvin Barker,* issued out of the supreme court, for 279 dollars and 43 cents, and a levy was

first execution sleep in the sheriff's hands; nor any evidence of such a delay as would afford a legal presumption of fraud, the first execution did not lose its preference.

Where the sheriff returns that he has a certain sum made by virtue of the execution ready to deliver to the party entitled, this is a sufficient evidence of a receipt of the money to charge him with the amount, though, in fact, no money was actually received by him.

made under it on the same property. When I received instructions to proceed on this execution, I advertised the property for sale by virtue of both executions, and have levied and made the sum of 263 dollars and 50 cents, which I have ready to deliver to *Ellis Doty*, the within-named plaintiff. to the amount of the execution, or to *Calvin Barker*, named in the other execution, as the court shall award and order, and the within-named *John Pierce* hath not any other or more goods and chattels, lands or tenements in my bailiwick, whereby I can cause to be levied and made, the residue of the debt and damages mentioned in the two executions, or either of them."

The plaintiff's counsel called the partner of the plaintiff's attorney, who delivered the execution to the sheriff, for the purpose of falsifying the return. He was objected to by the defendant, but the judge overruled the objection. He testified that he gave the execution to the deputy of the sheriff, and directed him to proceed thereon; but at the same time told him that he did not believe it would be the plaintiff's wish to distress *Pierce*, as he was the plaintiff's father-in-law; and that there was no occasion to get a receipt for the property, after he had levied on it, as *Pierce* would not squander or conceal it, and he need not remove the property. He did not tell the deputy sheriff to delay proceeding on the execution, until after the time it was made returnable.

The deputy sheriff who made the return, after being released by the witness, testified to the truth of the return. Nothing was said to him, as to the time to which the delay of the execution was to extend; but he did not understand it was to be delayed, so as to suffer another execution to gain a preference.

It was further proved, that no money was actually paid to the defendant; but the property was bid off by the subsequent creditor, and was accepted by the defendant, as a payment on the subsequent execution.

The judge directed the jury to find a verdict for the plaintiff for the amount of his execution, with interest, on the ground that there had not been such a delay by the plaintiff, as to give a preference to the second execution ; and the jury found a verdict accordingly.

A motion was made to set aside the verdict, and for a new trial; 1. Because the judge admitted improper testimony; 2. Because he misdirected the jury.

*Foot*, for the defendant.

*H. Bleecker*, contra. He cited 1 *Wils.* 44. *Peake's N. P.* 65. 2 *Bos. & Pull.* 59. 2 *Saund.* 344. 2 *Lord Raym.* 1075. *Cro. Jac.* 514. 3 *Wils.* 14.

*Per Curiam.* The question is, whether the first execution is to be deemed fraudulent, as against the second, in consequence of the directions given by the agent of the plaintiff to the sheriff. It was competent for the plaintiff to prove by the agent what those directions were, notwithstanding the return, for the recital on the subject in the return, was of extrinsic matter, not appertaining to a strict official return. The testimony given by *Houghton* does not, however, essentially vary from that stated by the defendant. The information given to the defendant upon delivery of the execution, was, that he need not remove the property to be levied on out of the possession of *Pierce*, nor need he take a receipt for it. This he said upon the supposition or belief, that the plaintiff did not wish to distress *Pierce*. There were no instructions to delay the proceedings after seizure, and the defendant only *inferred* a consent to the delay which took place. There was no agreement between the plaintiff and *Pierce*, that the execution should sleep in the sheriff's hands; and it does not appear, from the case, what time elapsed between the delivery of the first and second execution. The case, therefore, does not come

within the rule of the common law recognised in *Whipple* v. *Foot.* (2 *Johns. Rep.* 418.) If a long time had intervened between the one execution and the other, it would have been ground for the jury to have inferred the consent of the plaintiff to the delay, and might have established the legal presumption of fraud. The direction to the jury was correct.

The return states that the defendant has 263 dollars and 50 cents, made by virtue of the sale under both executions, which he is ready to deliver to the party entitled. This was evidence sufficient of the receipt of the money; and the arrangement between the sheriff and the purchaser shows that the former was willing to consider that arrangement as equivalent to the payment of the money. The return authorized the jury to infer the actual receipt of the money, and as the plaintiff in the first execution had not lost his preference, the motion on the part of the defendant to set aside the verdict is denied.