## RUSSELL *against* GIBBS.

A levy on a       ON error from the Washington C. P. Gibbs sued Russell
*fi. fa.* by the   in a justice's court, for the price of a mare sold and deliver-
deputy of a
sheriff, is   a    ed by Gibbs, as sheriff of Washington county, on an execu-
constructive
levy, on the      tion, to Russell, who bid off and received the mare. The
same proper-      justice having rendered judgment for Gibbs, Russell appeal-
ty, of a subse-
quent *fi. fa.*    ed to the Washington C. P. where the judgment was also
delivered to a-    for Gibbs; whence Russell brought error to this court upon
nother deputy
of the same       a bill of exceptions, presenting the following facts:
sheriff. And
this, though        Russell was the owner of a judgment rendered by the
the property      Washington C. P. in favor of Lane against Nichols. A *fi.*
first levied up-
on he, after-     *fa.* on this judgment, tested in August term, 1818, of the
wards, before     Washington C. P. and returnable in December term of the
the delivery of
the second ex-    same year, was levied on the mare in question, about the
ecation, remo-    5th of September, of the same year, by S. a deputy of Gibbs.
ved into a-
nother state      Afterwards, M. another deputy of Gibbs, received another *fi.*
and remain
there till after  *fa.* against Nichols in favor of Lacy, issued from the Wash-
the return day    ington C. P. tested the 10th of March, 1819, and returnable
of the second
execution.        the last Tuesday of May, in the same year, which he levied
A *fi. fa.* does   on the personal property of Nichols, on the 14th of May, 1819;
not become
dormant or        but did not find the mare; she having been, before the receipt
fraudulent, as
to subsequent     of the execution by M. removed by Nichols into the state
executions, by    of Vermont; where she remained till the 20th of June, 1819;
the mere in-
dulgence or
negligence of the sheriff to proceed and sell, without any act of the plaintiff.

A plaintiff bidding on his own execution, is not bound to pay the money.

But if there be a dispute between him and other creditors, as to which execution the
money is to apply, semb. the sheriff may refuse the plaintiff's bid; or refuse to deliver the
property till the money be paid; and proceed to sell again if it be not paid according to
the bid made.

But if he sell and deliver the property to the plaintiff he cannot maintain an action for the
price bid.

when she was brought back to Washington county; being after the return day of Lacy's execution. M. advertised Nichols' property to be sold on the 21st of June 1819; and sold all he could find, except the mare, which he then caused to be set up. Russell then stated he should bid off the mare upon his own execution, in S.'s hands. M. replied, that all the property sold must be applied on Lacy's execution. Russell however, purchased the mare at $45; but refused to pay the bid; insisting on the right to apply this sum on his own execution.

This case being made out in the C. P. Russell objected to Gibb's recovering, on three grounds:

1. Because Russell's execution was entitled to be first satisfied.

2. Because Lacy's execution had never been levied; and the mare being out of the state, during the life of Lacy's exccution, the previous levy by Stephens would not work an implied levy upon the second execution.

3. Because the mare could not be sold under Lacy's execution.

The C. P. overruled the objections; holding, that whether Lacy or Russell was entitled to the money, the sheriff should recover it; and then pay it out as the law might require.

*Russell* excepted to this opinion; and brought error.

*S. G. Huntington,* for the plaintiff in error, cited 12 John. 403; 13 id. 225; 16 id. 287.

*S. Stevens,* contra. The question is, whether Russell's exccution was not dormant from the great lapse of time, during which it lay without being enforced. For the purpose of having that question properly decided, the sheriff should hold the money till appropriated by law.

The sheriff having before, by his deputy S., levied on the mare in question, she is to be considered all along in his custody; and the delivery of the second execution was a constructive levy. (17 John. 116.)

Russell's execution was a dormant one.   (17 John. 274.)

Russell
v.
Gibbs.

*D. Russell*, in reply.   *Doty* v. *Turner*, (8 John. 20,) is a full answer to the objection of Russell's execution being dormant.   The delay was not his fault.   He never directed or countenanced it.

The right to retain the bid, depends on the question, where the money was to go ?   Russell's holding it would not prevent its application by the law.   Lacy should have moved the court for direction on that head.   *Nicholls* v. *Ketchum*, (19 John. 92,) is in point that a creditor bidding on his own execution, need not pay the  money.

*Curia*, per SAVAGE, Ch. J.   The important question is, whether the first execution was dormant.   If so, then it was as no execution ; and the plaintiff below might sell the goods levied on under it ; or they might be levied on by a second execution.   But as no levy was actually made under the second execution, on the mare in question, till after the return day, the sheriff had no authority to sell : unless, indeed, she was in his possession by virtue of the levy under the first. But if she was so in his possession, then it seems to me to follow, that the first execution was not dormant.   If not so, it was of course entitled to be first paid by the sales of property levied on under it.   Whether the plaintiff in that execution would be entitled to retain the money bid for property purchased by him, against the consent of the sheriff, is another question.   If the first execution was dormant, it became so by lapse of time, or by leaving the property levied on in the hands of Nichols ; for it does not appear that any instructions for delay were given to the sheriff by the plaintiff, or the assignee of that execution.   Nor was there any agreement for delay between the parties.

It may be useful to review some of the cases to ascertain whether the first execution was dormant.   Our books are full of cases where the subject of dormant executions is discussed ; but in most, if not all, there has been some instruc tions given the sheriff by the plaintiff, to delay the collection of the money.

The first case in our own reports, in which I have observed this doctrine noticed, is that of *Whipple* v. *Foot*, (2 John.

422. An execution was levied on wheat growing; and remained in the sheriff's hands from the 19th of December, 1805, till the following August, when the wheat was harvested and sold. The court said the mere delay, in such a case, would not of itself amount to a fraud in law. Thompson, Justice, in giving the opinion of the court, says, this could not be considered a dormant execution within the operation of the rule, " that if a creditor seize the goods of his debtor on execution, and suffer them to remain in his hands, the execution is deemed to be fraudulent and void against a subsequent execution." He cites Prec. in Ch. 286 ; 2 T. R. 596 ; 1 Vern. 245 ; and 7 Mod. 37 ; as containing this rule. In *Edwards* v. *Harben*, (2 T. R. 596.) Buller, Justice, refers to Pr. in Ch. 287 ; and says, " Sir E. Northey cited a case where a man took out execution against another; by agreement between them, the owner was to keep the possession of them upon certain terms ; and afterwards another obtained judgment against the same man, and took the goods in execution; and it was held that he might; and that the first execution was fraudulent and void against any subsequent creditor; because there was no change of the possession ; and so no alteration made of the property." I apprehend the true reason of this case was, that the possession continued in the defendant for an indefinite period, by an agreement with the plaintiff. The 1 Vern. 245, contains nothing on the subject ; and the 7 Mod. 37, was this : " *Rice* v. *Sargeant*. A man has judgment for a just debt against A. and takes out a *fi. fa.*, and gets the sheriff to seize the goods; but would not let him proceed further ; but suffered the goods to remain in the custody of the debtor. B., who has also a judgment against A. for a just debt, takes out a *fi. fa.* ; and the question was, whether he could seize upon the same goods ? And, *per curiam*, he may ; for the former was a fraudulent execution ; and the sheriff might very well return *nulla bona* upon the first execution." Here again the conduct of the plaintiff raises the presumption of fraud. The sheriff wished to proceed ; but the plaintiff would not let him. Not so in this case. No direction from the plaintiff appears. And the court in the last case say, the sheriff

ALBANY
Feb. 1826.

Russell
v.
Gibbs.

might have returned *nulla bona.* Could he have done so in this case? Clearly not; for, from the evidence, all the delay and all the indulgence to the defendant, arose either from the favor or negligence of the sheriff.

The rule in England, then, I apprehend, is not so broad as it is laid down in *Whipple* v. *Foot.* But if it were, it has never been considered in this state, as I understand the law, that the plaintiff in an execution is to be charged with fraudulent conduct, without some act of his, other than delivering his execution to the sheriff to be served according to law.

In *Doty* v. *Turner,* (8 John. 20,) the plaintiff's agent when he gave the *fi. fa.* to the sheriff, told him to proceed, at the same time, saying, the plaintiff did not wish to distress the defendant, who was his father-in-law; and that the sheriff need not take a receipt for the property, as the defendant would not squander or conceal it. The sheriff levied, and did nothing more, until a second execution came into his hands, when he sold on both; and the court decided that the plaintiff was entitled to the money. They say there was no instructions to delay. There was no agreement between the plaintiff and defendant, that the execution should sleep. It is added, "If a long time had intervened between the one execution and the other, it would have been ground for the jury to have inferred the consent of the plaintiff to the delay; and might have established the legal presumption of fraud."

The case of *Storm* v. *Woods,* (11 John. 112,) the court said, came within the principle established in the English courts. The facts were, that the plaintiff in the first execution delivered it to the sheriff on the 5th of June, 1807. In September after, he assigned it to A. & D. Lane. In May, 1808, the second execution came; but the proceedings on the first were stayed by directions in writing from the plaintiff's attorney, which were never countermanded until after the receipt of the second. And in August, 1808, A. & D. Lane directed the sheriff not to sell unless pressed by younger executions.

In the case of *Kellogg* v. *Griffin*, (17 John. 274,) the plaintiffs delivered their execution the 13th of October, 1817; and instructed the sheriff to make a levy, and do nothing further until ordered, unless crowded by younger executions. They presented him with an inventory at the same time. A receipt was endorsed; and they told the defendant that if Evertson forced the sale, they would bid off the property, and leave it with him. On the 5th of May following, Evertson's execution was delivered, on which the property was sold in July. The court say, " the evidence warrants the inference, that the plaintiffs issued their execution not with an absolute intention of collecting their debt; but partly, at least, with a view to cover the property of the debtor, for his use." Their execution was held fraudulent.

In all these cases, and in all the cases of this description. which I have seen, there has been some act of the plaintiff authorizing the delay. And the case of *Rew* v. *Barber*, (3 Cowen, 279,) distinctly makes this qualification to the rule as laid down in *Whipple* v. *Foot*. In *Rew* v. *Barber*, we considered it an important circumstance, that there was no direction to delay the execution, or liberty to the defendant in the execution, to use the horse; though he was left with the defendant by the express direction of the owner of the execution.

There may be cases, undoubtedly, where an unreasonable delay, or omission to urge on the sheriff to do his duty, will be construed into a consent, on the part of the creditor, to the delay. That this is such a case, I am not prepared to say. The execution was tested in August, 1818; returnable in December. Until the return, the plaintiff could not rule the sheriff. He took no step to procure a return of his execution; at least, none is shown, for six months, or from December till June. Whether the other property levied on by the first execution, had been sold, we are not informed. But to say that an implied indulgence of six months, when no other creditor was pressing, is such a culpable negligence as to become, *per se*, evidence of a fraudulent intent to cover the defendant's property, and to delay and hinder

his other creditors from collecting their just debts, would be judging very harshly of the motives of our fellow citizens; and inculcating a degree of rigor which may become highly oppressive to unfortunate debtors.

In my opinion, the first execution is not to be considered dormant. The sheriff, therefore, was justifiable in selling the mare under the second execution. But the first execution is entitled to be first paid. (1 T. R. 729.) And the property in question having been levied on under that execution, the plaintiff was entitled to receive the money.

The only remaining question is, whether the sheriff is entitled to recover the value of the mare from the plaintiff in error; though the latter is entitled to receive the same money from the sheriff, at the moment of its payment. The answer seems to be, *cui bono?* Since the plaintiff is entitled to the money, why compel him to pay it? Why should he do this, when he may turn round and sue the sheriff for it? The general rule, undoubtedly is, that the sheriff must sell for cash; but the court in *Nichols* v. *Ketchum*, (19 John. 92,) say, " it would be unreasonable and injurious to debtors as well as creditors, to insist that the creditor on the execution should advance money on his bid, when the sole object of the sale is to put money in his pocket by paying a debt due to him."

But it may be urged, that in case of contest, it is proper for the sheriff to bring the money into court. It is so. And in such case it may be proper for the sheriff to refuse to deliver the property, till he receives the money; and if the money is refused, he may re-sell the property. But if he delivers the article without receiving the money, and chooses to prosecute for it, is it not a good defence for the purchaser to show that the money belongs to him? And will not the court allow him to retain his own money in preference to paying it to the officer and compelling him to sue for it?

In this case, the purchaser asserted his right to bid on his own execution. The sheriff told him the money must be applied on the second execution. If the sheriff intended to insist on the money, he should not have received the bid

or he should have re-sold on the purchaser's refusing to pay the money. But by delivering the mare, it seems to me, he conceded the point in dispute. By selling property which he could not have sold on any other principle, than the force and effect of the plaintiff's execution, he admits his right to the money.

On every ground, therefore, I think the sheriff could not recover.

The judgment below must be reversed; and a *venire de novo* issue from that court.

Judgment reversed.