each court acting exclusively by itself will necessarily tend, most of all others, to introduce discrepancies between the decisions of these numerous tribunals. It must be an occurrence familiar to the experience of judges, that sitting together and hearing the same arguments upon the same statement of the case, their impressions are frequently, in the first instance, exceedingly diverse; and it would be a most rare event for two or more to hear a point really debatable, well discussed at the bar, and yet form within their own minds exactly the same conclusions. It is only by free conference, by mutual study of the question, by explanations and reasonings, reiterated with each other, and cautiously reviewed with an earnest anxiety to arrive at the correct result, that a common opinion can ordinarily be attained between men of equal intelligence, and examining the same subject from one point of view, and with advantages common to all. In the thirty district courts of the United States, officiating under circumstances of extraordinary diversity in respect to each other, the chances of opposing judgments upon the same questions must almost equal in number the points to be decided. And it certainly argues creditably for the perspicuity and precision of our statute laws, that they can be administered in so many tribunals, over a country so wide in extent, with practically so few and unimportant collisions in their construction.

Considering these debtors as continuing indebted and partners up to the time the petition was filed, I shall hold that their mere insolvency, without evidence of fraudulent acts, would not be sufficient to sustain the proceedings; but that they are liable to be decreed bankrupts upon the acts of fraud committed by their partnership, anterior to the passage of the bankrupt act, as set forth in the petition.

## Case No. 6,856a.

### In re HULL et. al.

[See Case No. 6,856.]

## Case No. 6,857.

### In re HULL.

[14 Blatchf. 257; [1] 18 N. B. R. 1.]

Circuit Court, E. D. New York. June 11, 1877.

BANKRUPTCY—RIGHTS OF PRIOR EXECUTION CREDITOR—LIEN OF EXECUTION.

1. C. docketted a judgment against H., and an execution thereon was delivered to the sheriff, who at the time had in his possession the goods of H., by virtue of an attachment issued in a suit against H. by W. Afterwards, H. filed a petition in bankruptcy and was adjudged a bankrupt, and J. was appointed his assignee. Independently of the attachment, the sheriff took no possession of the goods of H. until aft-

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

er the petition in bankruptcy was filed. C. applied to the district court to be paid the amount of his judgment in full, but his application was denied: *Held*, on review, that C. was entitled to be paid his claim in full.

[Cited in Re Wheeler, Case No. 17,490; Claridge v. Kulmer, 1 Fed. 402; Crane v. Penny, 2 Fed. 189.]

2. The property being in the possession of the sheriff under the attachment, the lien of the execution attached to it, and remained, although the operation of the bankruptcy proceedings was to vacate the attachment.

3. The case of In re Beisenthal [Case No. 1,-236] distinguished.

[See Bartlett v. Russell, Case No. 1,080.]

[In bankruptcy. In the matter of Arthur A. Hull.]

Thomas L. Robinson, for assignee in bankruptcy.

Taylor & Fowler, for Collins, Downing & Co.

HUNT, Circuit Justice. This is a petition for a review of the decision of the district court, in which the conceded facts are as follows: A petition was presented to the district court, and a motion made thereon, by Collins, Downing & Co., for an order directing John C. Cutter, the assignee of the bankrupt, to pay to Collins, Downing & Co. the amount of their claim in full, upon the following statement of facts, agreed upon by the counsel of the respective parties: "On the 9th of September, 1873, at 12.25 p. m., Collins, Downing & Co. docketted in the office of the clerk of Kings county, a judgment against the bankrupt for $158.62. At 12.30 p. m., of that day, an execution was delivered to the sheriff of Kings county on said judgment. At the time of the delivery of said execution to the sheriff, the sheriff was in possession of the goods of the bankrupt, by virtue of an attachment issued in a suit begun against the bankrupt by West, Call & Whittemore. At 1.20 p. m., of the same day, the petition of the bankrupt to be adjudicated a bankrupt was filed. No actual possession of the bankrupt's property was taken by the sheriff, independently of the attachment of West, Call & Whittemore, until after the filing of the petition. There are no other claims against the estate claiming security or priority, and there are assets in the hands of the assignee sufficient to pay this claim." The district court denied the motion. [On the 3d day of May, 1876, at a special term of the said United States district court, the Hon. Charles L. Benedict being present, an order was entered to the following effect, viz.: "On a motion having been made by Collins, Downing & Co. for an order directing John C. Cutter, the assignee of said bankrupt, to pay to said Collins, Downing & Co. the amount of their claim in full, now upon said motion and stipulation of admission as to facts made by the solicitors of the respective parties, and upon all the proceedings herein, after hearing Taylor & Fowler, solicitors for the petitioners, Col-

lins, Downing & Co., in behalf of said motion, and Thomas D. Robinson, solicitor for John C. Cutter, in opposition thereto, it is hereby ordered that the said motion be, and the same hereby is denied."] [2]

The attachment under which the sheriff held the property of the bankrupt was issued by virtue of a statute of the state of New York. Code, § 227. It was the duty of the sheriff to seize the property of the alleged debtor, to take it into his possession, and to hold it, as security for the satisfaction, of such debt as should be recovered in the proceeding. The general or ultimate property in the goods levied upon was in the debtor. Thus, if the attachment proceedings had been vacated, or, upon trial, the plaintiff had failed to establish his right of action, the title to the property, and the right to possession free from lien or claim, would have existed in the debtor, and this without any affirmative proceeding on his part. The special property, lien and control of the sheriff to and over the property are of the same character as in the case of an execution upon a judgment. If the judgment in such case should be vacated, the special interest of the sheriff, (unless there might be a lien for his fees,) would cease, and the entire property would at once be in the debtor.

In the case of property levied upon and held by a sheriff by virtue of an execution, it is well settled, that, when another execution is placed in his hands, no new levy is needed, but the first levy applies to, and is deemed to be made upon the second execution, equally as upon the first. Cresson v. Stout, 17 Johns. 117; Russell v. Gibbs, 5 Cow. 390. In Birdseye v. Ray, 4 Hill, 158, 160, speaking for the court, Judge Nelson says: "The object, as well as the effect, of an actual levy is, to bring the goods into the possession and under the control of the sheriff, for the double purpose of safe keeping, and to enable him, by a sale, to apply the proceeds in payment of the debt. After seizure, they are in the custody of the law, or of one of its ministers, until a sale and delivery to the purchaser; and an actual levy under the second execution would, therefore, be but an idle formality."

We may assume the case, then, as one in which a judgment had been obtained, an execution issued, and a levy made, before the petition in bankruptcy was filed. Wilson v. City Bank, 17 Wall. [84 U. S.] 473, holds such a lien to be good against the bankrupt proceedings.

I am also of the opinion that the lien would have been complete under the laws of New York, if there had been no levy by the sheriff before the petition in bankruptcy was filed. The statute of New York enacts, that, upon the delivery of an execution to a sheriff, the same becomes a lien from the time of such delivery, upon all the personal property of the debtor within the county, as against every one, except a purchaser for a valuable consideration, without notice of the execution, though no actual levy be made. 2 Rev. St. pp. 365, 366, §§ 13–17; Lambert v. Paulding, 18 Johns. 311.

It is argued, however, that to allow this levy to hold the property would be in violation of the spirit of the bankrupt law [of 1867 (14 Stat. 517)], which intends, it is said, an equal distribution among the creditors of all the bankrupt's property. It is said, also, that the attachment was not vacated in favor of or for the benefit of the execution debtor, but of all the creditors. No doubt the attachment, when declared by the bankrupt act to be dissolved, if issued within four months before the commencement of the bankrupt proceedings, is dissolved for the benefit of the estate. But such dissolution does not affect any prior liens upon the property, which are recognized by law. The bankrupt act (section 14), aims a particular blow at attachment proceedings, as mesne process, and declares, that, if made within the preceding four months, the process shall be dissolved. But it makes no such declaration as to an execution, which is final process, or as to the lien of a mortgage. The effect of these liens is determined by a subsequent section (section 35), and the bona fides of the security, with reference to the bankrupt act, furnishes the test of validity. By the decision of the supreme court of the United States, already cited, an execution upon a judgment obtained without the aid or connivance of a debtor, is valid under the bankrupt law. The judgment of Collins, Downing & Co. is not impeached as improperly obtained, and is, therefore, good in its claim as a prior lien upon the property of the bankrupt.

Nor am I able to see any force in the argument, that a defective levy upon an execution does not create a valid levy in favor of a subsequent execution. In this case, the sheriff's possession under the attachment was perfect in fact, and was good in law, when the Collins execution was placed in his hands. The law then and there applied his possession and interest to the execution, and, although the first lien was declared to be void, I see nothing in the statute, or in principle, to impair the lien of the execution.

The case of In re Beisenthal [Case No. 1,236], decided by Judge Johnson, is cited. That case, however, may well be sustained without interfering with the views here expressed. An assignment good at the common law, and valid by the laws of New York, had been made by the bankrupt before the petition was filed. Under that assignment the entire property in the goods in question passed to the common law assignee. There was no interest left in the debtor to which the levy of an execution could attach. The execution, therefore, fixed no lien on the goods, as in the present case, and, when the

---

[2] [From 18 N. B. R. 1.]

assignment was vacated by the bankruptcy proceedings, the goods came to the bankrupt assignee free from any lien or charge. The case is essentially different from one where the general property in the goods remains in the debtor, where an execution is levied upon that interest, and the goods come into bankruptcy charged with that lien.

Upon the whole case I am of the opinion that an order should be entered directing the assignee in bankruptcy to pay to the petitioners the amount of their claim proved against the bankrupt's estate, and it is ordered accordingly.

---

## Case No. 6,858.

### HULL OF A NEW BRIG.

[The case reported under above title, in 3 Law Rep. 69, and 23 Am. Jur. 453, is the same as Case No. 2,316.]

---

HULL OF A NEW BRIG (READ v.). See Case No. 11,609.

---

## Case No. 6,859.

### The HULL OF A NEW SHIP.

[2 Ware (Dav. 199) 203.] [1]

District Court, D. Maine. Sept. Term, 1842.

ADMIRALTY JURISDICTION — MECHANIC'S LIEN — PARTIES TO SUIT — HYPOTHECATION OF AFTER-ACQUIRED PROPERTY—PRIORITY OF LIENS—SUBROGATION — ASSIGNMENT OF CLAIM — SPLITTING OF CLAIM.

1. When the local law gives a lien to material-men and mechanics, for their demands against a ship, it may be enforced in the admiralty.

[Cited in The Richard Busteed, Case No. 11,764; The Kate Tremaine, Id. 7,622.]

2. All the privileged creditors may unite in one libel, or if a libel has been filed by any one separately, then others may come in by petition and make themselves parties to the suit.

[Cited in The Prinz Georg, 19 Fed. 654.]

3. A valid contract of hypothecation may be made not only of things which the party has at the time of the contract, but of what he expects to have, and of things not then in existence. It will attach to, and find, the party's interest in the thing as soon as it comes into being.

4. A ship-builder, before he commenced building a vessel, entered into a contract with a merchant by which he hypothecated the vessel to be built for advances. This was held to be a valid hypothecation of the builder's interest in the vessel, and to give a lien upon it.

5. By a statute of Maine, material-men and mechanics have a lien on vessels for materials and labor employed in making it, which has precedence over the claims of all other creditors. The lien created by the contract of hypothecation was postponed to those of the material-men and laborers.

[Cited in The Hiawatha, Case No. 6,453.]

6. Nor was the hypothecary creditor subrogated to their privilege, merely by paying their claims on orders drawn by the builder.

7. But when he actually furnished materials, he was allowed to claim concurrently with them.

---

[1] [Reported by Edward H. Daveis, Esq.]

8. When a creditor transfers his debt, the assignment of the debt carries with it all the accessory obligations, as pawns, hypothecations, or sureties, by which the debt is secured.

[Cited in The Sarah J. Weed, Case No. 12,350; Hooper v. Robinson, 98 U. S. 538. Approved in The New Idea, 60 Fed. 294.]

9. But where a creditor has a debt due him on a single contract or obligation, he cannot divide it by assigning part to one and part to another so as to enable each assignee to maintain a separate action without the assent of the debtor.

This was a libel by Richard Abbott, a carpenter, against the hull of a new ship, for work and labor performed by him in building her. She was launched March 31, 1842, and the libel was filed the next day, April 1. He claimed a privileged lien on the vessel for his pay, under a law of the state which provides, that "any ship-carpenter, calker, blacksmith, joiner, or other person, who shall perform labor or furnish materials, for, or on account of any vessel, building or standing on the stocks, or under repairs after having been launched, shall have a lien on such vessel for his wages and materials until four days after such vessel is launched, or such repairs have been completed" (Rev. St. Me. c. 125, § 35), and giving them a priority and precedence over all other creditors of the owner. After the vessel was arrested on this libel, a large number of other creditors, amounting to thirty-one in all, intervened by petition, claiming to have similar demands and praying to have their liens allowed, and to be paid out of the proceeds of the ship.

The libel and all the petitions were committed to S. Longfellow, Esq., a master in chancery, to examine into the several claims set forth, and to report to the court: First. What sum is justly due to each of said libellants and petitioners for labor performed and materials furnished for and on account of said ship. Second. Where any of the parties have furnished materials for or on account of said ship, and the whole of the same have not been used in the building of the vessel, to distinguish and report: (1) Such as have been used, from such as have not been used. (2) What part of the materials not used were furnished by the material-men, under a just belief and expectation that they were wanted for the vessel and intended to be used in the construction of the same. Third. To report what sums, if any, are claimed as liens on the vessel for money paid to the workmen for labor in satisfaction of their wages, or to material-men for materials furnished, and at whose request they were paid.

The vessel was sold on an interlocutory order for $13,000, and the proceeds paid into the registry. The master reported a large number of debts due to laborers and material-men about which there was no controversy. With respect to two large debts, which were claimed as chargeable on the vessel in concurrence with those of the ma-