(21 Misc. Rep. 114.)

### In re POND.

(Supreme Court, Special Term, Monroe County. July, 1897.)

1. EXECUTIONS—LEVY—SUFFICIENCY.

An officer, holding an execution, went to defendant's place of business, and showed it to the manager, and directed two of defendant's workmen to look after the property, and to keep him posted if any of it was being removed, and afterwards he indorsed on the writ a memorandum as of a levy. *Held* a valid levy, as against subsequent execution creditors.

2. SAME—DORMANCY—FAULT OF PLAINTIFF.

After levying an execution, the officer told plaintiff's attorney of the fact, saying he thought the owners would fix it up in a day or two, to which the attorney replied, "All right," and that he did not want the matter pressed too hard if the lien was secure. *Held*, that a subsequent delay on the part of the officer in selling the property under the levy was not chargeable to plaintiff because of said remark, so as to render the execution dormant as to subsequent execution creditors.

3. SAME—PRIORITY OF LEVIES—LIEN.

Even when no levy is made upon personal property under an execution delivered to the proper officer to be executed, yet, if a sale of the property is made under a levy by virtue of a subsequent execution, the proceeds of such sale will be first applied to satisfy the prior execution, which became a lien on the property by virtue of, and from the time of, its delivery to be executed. Code Civ. Proc. §§ 1405–1406.

4. SAME—CORPORATIONS—RECEIVER.

The appointment of a receiver over property of a corporation which has already been levied upon by virtue of an execution will not destroy the lien which the execution creditor obtained by the levy.

Motion to confirm the report of the referee, appointed to audit the accounts of Charles F. Pond, receiver of the Weaver Lumber Company. Report modified.

J. Breck Perkins, for Clarissa H. Warrant and Traders' Nat. Bank.
J. J. Inman, for Christopher Willover.

DAVY, J. This is a motion to confirm the report of the referee appointed to pass upon the accounts of the receiver of the Weaver Lumber Company, and to report the amount due each of its creditors, and the priority of their liens. The principal objection raised to the confirmation of the report is that the referee found that the execution in favor of Christopher Willover became dormant and void as against the Clarissa H. Warrant execution and the Traders' National Bank attachment. It appears from the evidence taken before the referee that Christopher Willover, on the 12th day of October, 1894, obtained a judgment against the Weaver Lumber Company for the sum of $682.77. A transcript of the judgment was duly docketed in the clerk's office of Cattaraugus county on the 23d day of October, 1894, and an execution was that day issued thereon and placed in the hands of W. C. Clark, a deputy sheriff of said county. It also appears that on the 1st day of November, 1894, a judgment was obtained by Clarissa H. Warrant against the said Weaver Lumber Company for $4,864.55. A transcript of that judgment was docketed in the Cattaraugus county clerk's office on the 2d day of November, 1894, and an execution was duly issued thereon to the sheriff of said county. In the afternoon of that day the

sheriff levied under the Warrant execution upon all the property owned by the Weaver Lumber Company. After this levy was made,. and on the same day, the sheriff attached. all the property of the Weaver Lumber Company by virtue of an attachment issued in a suit brought by the Traders' National Bank of Rochester against said company. A judgment was obtained by the bank in that action on the 10th day of December, 1894, for the sum of $12,638.50, and duly docketed in the office of the clerk of Cattaraugus county on the 11th day of December, 1894. On the 7th day of November, 1894, a receiver was appointed of the Weaver Lumber Company, who took possession of all its property, including the property in the hands of the officers levied upon under said executions, and the same was thereafter sold and converted into money by the receiver: The referee finds that prior to the levy of the execution in favor of Clarissa H. Warrant and of the attachment issued in behalf of the Traders' National Bank no actual levy was made under the execution issued on the judgment in favor of Christopher Willover, and that the Willover execution became dormant and void as against the Warrant execution and the Traders' National Bank attachment; that Clarissa H. Warrant has the first lien and the Traders' National Bank the second lien on the funds in the hands of the receiver.

The position taken by the learned referee that the Willover execution became dormant while in the hands of the deputy sheriff is not, in my judgment, supported by the evidence. It is undoubtedly true that, if the execution was issued for the purpose of merely obtaining a lien to hold it as security, then a subsequent execution would take precedence. Landis v. Evans, 113 Pa. St. 335, 6 Atl. 908; Lantz v. Worthington, 4 Pa. St. 153. As against a bona fide purchaser, or against a subsequent execution debtor, it must depend upon the facts and circumstances in each particular case as to what will constitute a valid levy. It is true, it was necessary in this case for the deputy sheriff, for the purpose of enforcing and satisfying the Willover execution, to make an actual levy and sale:. He was also required to take possession of the property for the purpose of exercising dominion or control over it. Without such possession or control, he could not make the execution effectual in producing means to satisfy the lien. It was also necessary that he should be able to expose the goods and chattels to view when they were offered for sale, and on the sale to deliver them to the purchaser or purchasers. The authorities all hold that a levy must be made during the life of the execution, and cannot be made after the return day has passed. Hathaway v. Howell, 54 N. Y. 112; Walker v. Henry, 85 N. Y. 135. A sheriff can, however, where a levy has been made, sell the property after the return day. Ansonia B. & C. Co. v. Conner, 103 N. Y. 511, 9 N. E. 238. It was held in the case last cited that it is often indispensable to the security of the rights of the plaintiff that the officer should retain the writ for that purpose. The deputy sheriff testified: That he received the Willover execution October 23, 1894. That on that day he went to the Weaver Lumber Company's mills, and levied upon the property of the com-

pany, and indorsed upon the execution a memorandum of the levy. That he informed Mr. Weaver, one of the managers of the firm, that he had an execution, and showed it to him. He then directed two of the workmen to look after the property, and to keep him posted. if any of it was being removed. After making the levy, he informed Mr. Davie, one of the plaintiff's attorneys, that he had been up to the Weaver Lumber Company's mills, and had made a levy upon the property. That he thought they would fix it up in a day or two, and Mr. Davie replied, "All right;" that he did not want the matter pressed too hard if the levy was secure. That is the substance of the testimony upon which the referee finds that the sheriff was authorized to allow the Willover execution to remain dormant. Mr. Davie, who is the surrogate of Cattaraugus county, and a gentleman whose reputation for truth and veracity cannot be questioned, testified that after the levy was made the deputy sheriff informed him that Inman had handed him the Willover execution, and that he had been up to the Weaver Lumber Company's mills, and had made a levy upon property, and he replied that it was all right, that Willover desired him to proceed, and do all in his power to enforce the collection of the judgment. He also testified that at no time was there any suggestion on his part to the deputy sheriff to hold the execution, or not to make a levy, or to do anything except to proceed and collect the amount of the judgment. It is evident that at the time the deputy sheriff informed the plaintiff's attorney that he had made a levy there was no obstacle in the way of collecting the execution. The writ commanded him to satisfy the judgment out of the property of the debtor. There was the indorsement on the execution in the usual form to levy the amount of the judgment, and his fees and poundage. It was the officer's duty, under the statute, to levy the execution first delivered to him, and to apply the proceeds of the sale to that execution as against such as came into his hands at a later date. He had 60 full days in which to perform the duties enjoined upon him, and there was ample time, even if the levy was not completed until the 2d of November, for him to advertise and sell the property before the return day. It seems to me that there can be no question but what the officer to whom the execution was delivered made a valid levy before the junior executions referred to came into the hands of the sheriff, and when the receiver was appointed he was in possession of the property, exercising dominion over it. If the 60 days had expired, and the officer had omitted to make a sale of the property by direction of the plaintiff or his attorney, then there might be good ground for claiming that the execution had become dormant. Even if the facts testified to by the deputy sheriff were true, no inference can be drawn from the remarks of the plaintiff's attorney to the officer that would justify or authorize him in holding the execution, and not making a levy and selling the property. If there was any delay on the part of the officer in taking possession of the property and selling it, it was not the fault of the plaintiff or his attorney, and the plaintiff, therefore, ought not to be held responsible for the ordinary neglect or delay of the officer with whom he

intrusted his process. There must be something more than mere acquiescence of an execution creditor in the delay of the sheriff in selling under an execution to entitle such creditor to contend succes: fully that an execution has become dormant or fraudulent as against subsequent executions. It must appear that the plaintiff or his attorney was responsible for the delay by giving instructions to the officer not to proceed in the collection of the execution.

It is a rule of law long established in this state that a party who issues an execution cannot lose his lien acquired by a levy upon property of the debtor without some fault on his part. Benson v. Berry, 55 Barb. 620; Benjamin v. Smith, 12 Wend. 404. And, in order to entitle a party holding a junior execution to contend successfully that the senior execution had become dormant or fraudulent as to the subsequent execution, it is necessary to show more than mere indulgence on the part of the plaintiff. Russell v. Gibbs, 5 Cow. 390; Childs v. Latham, 14 N. Y. Supp. 507. He must show that the neglect of the sheriff to proceed and sell was caused by the plaintiff. Doty v. Turner, 8 Johns. 20; Whipple v. Foot, 2 Johns. 422. Freeman, in his work on Executions (section 207), says, except where lost by abandonment of the levy, or by fault of the plaintiff in staying the execution of the writ or in making some use of it actually or constructively fraudulent, the lien of an execution seems not to be lost except by some matter which is sufficient to deprive the writ of all further vitality. In Sheldon v. Payne, 7 N. Y. 458, it was held that to discharge "the sheriff from liability for the acts of his deputy it must be shown not only that the plaintiff directed the deputy to depart from the line of his duty imposed by law, but that the deputy followed, or at least undertook to follow, the directions given. He cannot otherwise be regarded in any respect the agent of the plaintiff." It was held in Keefe v. Filler [Brown's Appeal] 26 Pa. St. 492, that, although the plaintiff issued an execution to prevent other creditors from levying on the property, the lien of his execution will not be postponed if he did not use it for the purpose of a levy solely, nor interfered with the sheriff in the performance of his duty, or gave no directions inconsistent with the command contained in the writ. If the officer did not take possession of the property on the 23d of October, he certainly took possession of it on the 2d of November, and had absolute possession and control of it several hours before the Warrant execution and the Traders' National Bank attachment were delivered to the sheriff. But, assuming that no levy was made under the Willover execution, that omission did not deprive him of his statutory lien on the personal property.

Sections 1405, 1406, Code Civ. Proc.. expressly provide that executions become liens on personal property from the time of the delivery thereof to the proper officer to be executed; so that, if the collection of this execution had been delayed by the officer, it would not have invalidated the plaintiff's statutory lien, or made the execution fraudulent as against junior executions. The provisions of the above sections make it the duty of the sheriff to give preference in the application of the proceeds of a sale under junior executions to a prior execution, although no levy be made thereunder. Pach v. Gil-

bert, 124 N. Y. 612, 27 N. E. 391. The language of the provisions of the Code is clear. It admits of but one interpretation. That has been fully expressed in the case referred to. The policy of the law is to give the creditor the preference to which his diligence entitles him. It was held in Gillig v. Treadwell Co., 148 N. Y. 177, 42 N. E. 590, that when two or more warrants of attachment against the same defendant are delivered to the sheriff of the same county, and he makes a partial but insufficient levy under the one first delivered to him, and levies the junior warrant upon other and separate property, the levy made under the junior warrant will, after judgment, inure to the benefit of the judgment creditor whose warrant was first delivered to the sheriff. When the sheriff made the levy under the Willover execution, and took possession of the property, the receiver, who was subsequently appointed, had no right to it. It was the duty of the officer to have retained possession of the property, and to have sold it to satisfy the execution. He should have taken all reasonable means to have protected his levy. The lien of the execution, therefore, was not destroyed by the appointment of the receiver, and Willover is entitled to have it satisfied out of the proceeds arising from the sale of the property. It was held in Re Muehlfeld & Haynes Piano Co. (Sup.) 42 N. Y. Supp. 802, that a lien on property which the sheriff has taken under an execution against a corporation is not devested by the subsequent appointment of a receiver, and a petition for the voluntary dissolution of the company, although the petition was filed before the entry of the judgment against the corporation. The court held that the property of the defendant corporation was bound by the execution from the time it was delivered to the sheriff to be executed. Code Civ. Proc. § 1405. All that was necessary to complete the lien was that the sheriff should make an actual levy during the life of the execution. Hathaway v. Howell, 54 N. Y. 97. The rule is that, when property delivered by the sheriff to a receiver shall have been sold by him, the proceeds thereof shall be set apart to apply to the judgment of the executions in the order of their priority.

The report of the referee, therefore, should be modified so as to require the receiver to pay the Willover judgment first.