NEW-YORK,
May, 1830.

Benjamin
v.
Smith.

---

BENJAMIN *vs.* SMITH, sheriff, &c.

An execution was held to be dormant and fraudulent as to a subsequent exe-cution, where the plaintiffs directed a stay of proceedings from March un-til July, and the sheriff delayed proceedings until December, in conse-quence of a conversation with them in August inducing him to expect further directions before proceeding to close the execution ; the second execution having come to the hands of the sheriff in October.

The declarations of the plaintiffs in an execution attempted to be shewn dormant are not admissible in evidence in an action against the sheriff for a false return of a second execution, where it is not shewn that they had indemnified the sheriff.

THIS was an action on the case for a false return, tried at the Chenango circuit in December, 1828, before the Hon. SAMUEL NELSON, one of the circuit judges.

The defendant, as sheriff of the county of Chenango, re-turned upon a *fieri facias* issued upon a judgment in favor of the plaintiff against one *Pliny Nichols*, upon which he was directed to levy $479,60, that he had caused to be made $18, and as to the residue *nulla bona*. The execution was returnable on the 27th October, 1827, and was delivered to one *Humphrey*, a deputy of the sheriff, four days before its return. It was proved that Nichols, in October, 1827, was the owner and in possession of personal property to the amount of between five and six hundred dollars, which was sold by one *Glover*, another deputy of the sheriff, 5th Janu-ary, 1828, for about $400.

On the part of the defendant, it appeared that an execu-
tion was issued and delivered to Glover, the deputy of the
sheriff, on the 27th February, 1827, against the property
of Nichols, on a judgment in favor of E. Rathbone and A.
Hunt, by which the sheriff was directed to levy $765,98
debt, besides costs. This execution was tested on the day it
was delivered to the deputy, and was returnable at the then
ensuing May term. Under it a levy was made on the 9th
March, 1827. The deputy did not, by the directions of the
plaintiffs in the execution, at that time apprise Nichols that
he had made such levy, as he was in very bad health, and
they were apprehensive the intelligence might injure him;
but he went into the several rooms of his house, and on the
same day made an inventory of the property levied on. Af-
ter the levy, the plaintiffs in the execution told the deputy
that in the then state of Nichols' health they did not wish
to sell his property, that he had promised to pay the execu-
tion by the first day of July, and they wished to give him an
opportunity to do so; they therefore directed him not to
proceed on the execution until that time, and if he did not
then pay, they should have to proceed on the execution and
sell his property. On the 1st August, 1827, Hunt, one of
the plaintiffs, told the deputy that Nichols had not paid any
thing on the execution, and that they should have to proceed
and collect the debt. The deputy told him he was going a
journey on the first of September, and if he wished the debt
collected by him before he went away, he must do it by that
time. Hunt left him, saying that he would see him again, or
that he would let him know. After this conversation the
deputy waited, expecting further directions from the plain-
tiffs in the execution, but received none until he advertised
Nichols' property for sale, in the latter part of December,
1827. The property was sold on the 5th January, 1828;
a few days previous to which time it was removed by Hum-
phrey, another deputy of the sheriff, from the house of Nich-
ols, by virtue of the execution in favor of the plaintiff in this
cause. Humphrey, as well as Glover, advertised the prop-
erty to be sold on the 5th January, and the sheriff (the de-
fendant in this cause) directed it to be sold on both execu-

tions, and the proceeds to be applied first in satisfaction of the execution of Rathbone and Hunt, which was done accordingly. The property levied on was household furniture necessary to the business of Nichols, which was that of a tavern keeper. Nichols was in feeble health during the year 1827. The plaintiff offered to prove the declarations of Rathbone and Hunt that they had directed the sheriff not to proceed on the execution after the levy until instructed by them so to do, as they did not wish to be the first to break up Nichols. This evidence was objected to and overruled. The evidence being closed, the presiding judge decided that the instructions of Rathbone and Hunt to the sheriff to stay their execution being in consequence of Nichols' illness, and proceeding from motives of humanity, their conduct was just and humane, and such as the law would approve of; that the whole case resolved itself into a question of law to be decided by the court; and that the verdict must be for the defendant. The jury, under the directions of the court, accordingly found a verdict for the defendant. A bill of exceptions was tendered and signed, and a motion was now made for a new trial.

*J. C. Clark*, for plaintiff.

*H. Vander Lyn*, for the defendant.

*By the Court*, MARCY, J. The bill of exceptions in this cause presents two questions: one on the rejection of the offer to prove the declarations of the plaintiffs in the first execution as to the instructions to the sheriff, and the other on the charge to the jury.

There are some exceptions to the general rule that neither party to a suit can be permitted to prove the declarations or admissions of third persons. Where a party refers to a third person for information on a particular subject, the answer of that person is generally evidence against such party. So, where a third person is an agent to make or negotiate a contract, what he says while executing the object of his agency is evidence against his principal. The declarations of an under sheriff, in matters relating to the execution of his office,

is evidence against the sheriff, since he is the responsible person. (1 Ld. Raym. 190.) Had it been shewn in this case that Rathbone and Hunt had indemnified the sheriff, then, being parties in interest, their declarations would have been admissible. (4 Campb. 38. Stark. Ev. pt. 4, 42.) But I do not discover any exception to the general rule that would sanction the evidence offered by the plaintiff. I think the judge decided correctly on this point.

The cases on the subject of dormant executions have been so recently reviewed by this court in *Russell* v. *Gibbs*, (5 Cowen, 390,) and the rule of law applicable to this case so well settled by the chief justice, that there is no occasion to look to any other authority. The rule as there settled is, that generally speaking the mere delay of the officer, without countenance or direction from the plaintiff in the execution, will not render the execution dormant. This case is supposed to differ from one to which that rule is applicable. There was a delay here by the express direction of Rathbone and Hunt. In March, they directed a delay till the 1st of July. If they had not directed or countenanced the officer in a delay beyond that period, I am disposed to think that the delay should not be adjudged prejudicial to their rights under the circumstances of this case; but, as I view the facts proved, they would have warranted the jury in finding that the delay subsequent to July was countenanced and approved by them. When they gave the directions to delay till July, they told the deputy if Nichols did not pay by that time they should have to proceed on the *fi. fa.* In August, Hunt told the deputy that Nichols had not paid any thing, and they (Rathbone and Hunt) should have to proceed on the execution. This mode of expression is somewhat peculiar, and seems to me to imply that they had something to do by way of setting the officer in motion. Again, Hunt's remark when the deputy asked him if he wished the debt collected before the 1st of September, that he would see him again, or that he would let him know, confirms the conclusion which, I think, the jury might have drawn from the expression of Hunt, " that they should have to proceed on the execution." The officer himself drew such conclusion, for he says " he waited, expecting other orders" from

NEW-YORK.
May, 1830.

Benjamin
v.
Smith.

them; he waited nearly or quite ten months from the time when he made the levy, and until another execution had been levied on the property and the defendant dispossessed. I will not say what inference a jury ought to draw from that portion of the testimony to which I have alluded, for that might not be strictly proper; but we are called on, in deciding this motion, to consider what inference they might have drawn from it. They might have believed that the delay subsequent to July was with the countenance and approval of Rathbone and Hunt, and if it was so, the execution in reference to that subsequently issued was in law fraudulent. In the case of *Lovick* v. *Crowder*, (8 Barn. & Cres. 165,) the sheriff was held liable, though the plaintiff there had much less reason to complain of the conduct of the sheriff than the plaintiff here had to complain of the proceedings of the defendant. I readily admit that there was something in the situation of Nichols to command sympathy; but if the application of legal principles were to be influenced in any considerable degree by the indulgence of sympathetic feelings, the uncertainty of the law would soon be subjected to a much more serious reproach than the sneer of those who are ignorant of the true character of the science of jurisprudence.

I think the judge erred in his charge. He should have instructed the jury to find the first execution dormant, or fraudulent as to the execution of the plaintiff, if the delay on it down to the time of sale was occasioned by the interference of the plaintiffs therein. I am therefore in favor of a new trial.