Wood v. Gary, et al.

## WOOD v. GARY, ET AL.

1. Where different creditors claim a priority of lien for their respective executions, and one of them moves against the sheriff and his sureties, so as to coerce an appropriation of the money to the satisfaction of his *fi. fa.* although the other creditor may have the prior lien, yet the party submitting the motion is entitled to a judgment for the excess of money in the sheriffs hands. But, if the plaintiff in such case have returned the facts specially to the Court, and asked its direction thereupon, he will be relieved from the payment of damages and interest.

2. A writ of *fieri facias* being returnable to the first Monday in April, the direction of the plaintiff to the sheriff on the 25th March preceding, to return it, will not render it *dormant*, or impair its *lien*, as it respects an execution of a junior judgment creditor subsequently issued, unless such return was made when the exe-

cution might have been satisfied and with interest to favor the defendant in execution.

3. An *alias* issued upon the judgment in such a case, will continue the *lien* of the first execution, if there has not been a lapse of an entire term intervening, and overreach an execution issued on a junior judgment before such *alias*, if the *alias* comes to the sheriffs hands before a sale of property under the junior execution.

4. When personal property of the defendant in execution is brought into the county after executions of different judgment creditors have come to the sheriffs hands against such defendent, the eldest judgment creditor who has preserved his *lien* will have the prior right.

WRIT of Error to the Circuit Cou of Sumter.

This was a proceeding by notice and motion under the statute, by the plaintiff in error against Gary, as the sheriff of Sumter, and the other defendants as his sureties. The case was commenced in the County Court, and transferred from thence to the Circuit Court, because, as it is alleged, the judge of that court was interested. The default charged, is the failure of the sheriff to pay on demand to the platintiff's attorney, the amount collected on an execution issued upon a judgment for twenty-five hundred and forty 89-100 dollars damages, and eight 06-00 dollars costs, which the plaintiff had previously recovered in the county court, against John H. Boling.

From a bill of exceptions taken at the trial, it appears that the plaintiff's judgment was rendered on the eighth day of February 1841; that the execution in question was tested of the eighth of March, thereafter, received by the sheriff on the first of April, and levied on the 22d of May, on merchandize in store and on town lots and land; and on the 25th of May, on slaves, household furniturne, cattle, &c. It is also shewn that Martha Dillard, recovered five several judgments in the Circuit Court of Sumter, at its term holden in October 1839, for a sum, amounting in the aggregate to six thousand dollars and upwards, against John H. Boling, all of which were affirmed on writ of error, against him and his sureties. Executions were issued on the affirmed judgments, and forthcoming bonds were given and forfeited. On the forfeited bonds, executions were issued against all the previous parties and the surety therein, tested of the thirteenth of October 1840, returnable on the first Monday in April thereafter, and placed in the sheriff's hands on the 20th February, 1841, which

Wood. v. Gary, et al.

were returned on the 25th March' 1841, indorsed by the sheriff as follows, "retured by order of plaintiff." *Alias fi. fas.* on the bonds were issued, tested the 18th of May, and placed in the sheriff's hands on the 19th of the same month, which were levied on the property on which the plaintiff's execution was levied. The merchandize was sold under all the executions for $5,993 09-100; the other property for $3,183 00-100, making $9,176 04-100, a sum more than sufficient to satisfy Miss Dilliard's executions, but not enough to satisfy both her's and the plaintiff's. It was admitted that the merchandize was not in the county of Sumter, until after the *alias* executions in favor of Miss D. were issued.

The Court decided, that the lien of the *alias* executions was prior to that of the plaintiff's execution, and that the proceeds of the sale of the merchandize was first applicable to their satisfaction. Thereupon the motion of the plaintiff was overruled and a judgment rendered against him for costs.

MURPHY & JONES, for the plaintiff in error. The judgment of the Circuit Court is erroneous,

1. Because conceding that Miss Dilliard's executions are entitled to a priority of satisfaction, and still there was an excess in the sheriffs hands to which the plaintiff is entitled.

2. By directing the sheriff to return her executions without a levy, and before the return day, Miss Dillard's executions lost all lien, that may have attached in their favor. [Berry v. Smith, 3 Wash. C. C. Rep. 60; Michie v. Planters Bank, 4 How. Rep. 130; Collingsworth v. Horn, 4 S. and P. Rep. 248; Payne v. Drew, 4 East's Rep. 538; Beals v. Allen, 18 Johns. Rep. 363; Storm v. Wood, 11 ibid. 110 ; United States v. Conyngham, 4 Dallas Rep. 358; Davis v. Hunt, N. C. Rep. 412. See also 4 Bibb's Rep. 29; 3 J. J. Marsh. Rep. 545.

3. As to so much of the property as was not in the county of Sumter, when the originial execntions in favor of Miss Dillard were in the sheriff's hands, the plaintiff's execution acquired a prior lien. [Aik. Dig. 165,] and consequently is entitled to be first satisfied.

THORNTON, for the defendant admitted, that the sale under the executions, produced a sum more than sufficient to satisfy

what was due on the *fi. fas.* in favor of Miss Dillard, and the sheriff was ready and willing to pay over the excess whenever the question of priority of lien should be determined. But the sheriff could not pay it with safety to himself and sureties until that question was decided.

In respect to the second point made, the direction to the sheriff to return the executions of Miss Dilliard, did not affect the lien which they had previously acquired, as they were again issued before the property was sold, and before a vacation had intervened. The fact that a part of the property sold, was not in the county until after the *alias fi. fas.* were placed in the sheriff's hands, can have no influence in determining the priority of lien, as they relate back to original executions, so as to overreach any *fi. fa.* which may have issued subsequently.

The Judges delivered their opinions *seriatim.*

COLLIER, C. J.—1. The judgment of the Circuit Court in effect determines, that the plaintiff is not entitled to recover of the defendants any part of his execution, though there was an excess in the sheriff's hands, after satisfying the *fi. fas.* in favor of Miss Dillard, to which the record does not show that there was an adverse claimant. This is clearly erroneous, and can be accounted for, only by supposing that in litigating the question of priority between the different executions, the amount to be appropriated to their payment was entirely overlooked. Conceding that Miss Dillard was entitled to a prior lien, yet after she was paid, the residue of the money should have been adjudged to the plaintiff.— The sheriff appears to have returned the facts specially on each of the executions, and asked the direction of the Court as to the order in which they should be satisfied : this was sufficient (according to the case of Braly v. Stout, Ingoldsby & Co., at the present term,) if the return was made in good faith, and for the purpose of obtaining the instruction of the Court, to have relieved the defendants from a judgment for damages and interest.

2. The second objection made by the plaintiff's counsel, to the proceedings below, supposes, that although a *fieri facias* may be placed in the sheriff's hands, and thus become a lien upon the defendants goods and chattels, subject to be seized by it, yet it will become wholly inoperative, if the plaintiff, by any act of his, prevent it from being executed.

This question is to a great extent, *res integra* in this Court; and before we express our own opinion upon it, we will briefly notice some of the leading cases on the point.

In The United States v. Conyngham, et al., [4 Dallas' Rep. 358,] it appeared that the plaintiffs in a *fieri facias* caused the same to be levied on goods belonging to the defendants, and then assigned their judgment: their assignees permitted the goods to remain in the defendants' possession, until an execution at the suit of another plaintiff, was levied on them: *The Court* held, that the first *fi. fa.* had lost its lien, and that the latter was entitled to priority. So, where a plaintiff obtained a judgment in one Court, and on the first of January, 1811, delivered to the sheriff a *fieri facias* issued on that day, with direction *not to levy it until further instructions.* On the 3d day of the same month the sheriff was instructed, and accordingly levied the execution, but did not remove the goods from the defendant's house, but left them according to the directions of the plaintiff *till further orders.* On the 4th day of the same month, two judgments were rendered in favor of other plaintiffs, and executions issued and levied the same day on the goods left in defendants' possession. The question was, whether the execution first issued and levied, should be satisfied before those under which it was removed from the defendant's possession. The Court said, it would "make no distinction between a suspension for one day, or one or more months. The order of suspension deprives the act of the officer, in pursuance of it, of all its force and effect, until it is restored by a countermand; and if in the mean time a second execution is taken out and levied, the former must be postponed." Further: " If the execution is delivered to the officer, with orders not to levy it at all, or until further orders, the purpose of the delivery is not answered, and all the legal consequences of the measure, in respect to creditors and purchasers who would otherwise have been affected by it, are defeated. If the officer is ordered to levy on, but leave the property with the owner until he shall be otherwise directed, the party undoes by such an order, all that the officer does by the seizure—it works no change of the property—it is no levy in respect to third persons. It is not necessary that the officer should remove the property or even sell it immediately, if this be done in a reasonable time, &c." [Berry v. Smith, 3 Wash. C. C. Rep. 60.] And in Storm v. Woods, [11 Johns. Rep. 110,] it is considered a well estab-

lished principle, "that if a creditor seize the goods of his debtor on an execution, and suffer them to remain in his hands, the execution is deemed fraudulent and void as against a subsequent execution." [See also, Whipple v. Foot, 2 Johns. Rep. 422; Farrington and Smith v. Sinclair, 15 Johns. Rep. 429; Buller J. *arguendo* in Edwards v. Harben, 2 T. Rep. 596; Payne v, Drewe, 4 East's Rep. 523, and Salk. Rep. 720; 1 Ld. Raym. 251; 5 Mod. Rep. 377; 1 Wils. Rep. 44; 7 Mod. Rep. 37; 1 Esp. Rep. 205; 1 Camp. Rep. 333.]

Where the plaintiffs, having a prior judgment, issued a *fieri facias* thereon in *January*, with instructions to the sheriff "to make a levy on the property of the debtor, but to do nothing until ordered, unless crowded by younger executions, but by no means to let the execution lose its preference"—the sheriff did nothing except merely to receive an inventory of the personal property of the debtor until another execution was delivered to him in *May* following, at the suit of a junior creditor: *it was held*, that the first execution was *dormant* and *constructively* fraudulent as against that which issued subsequently. [Kellogg v. Griffin, 17 Johns. Rep. 274.] *Further*, say the Court, the evidence warrants the inference, that the plaintiffs issued their execution, not with an absolute intention of collecting their debt, but partly at least, with a view to cover the property of the debtor for his use. Having made use of their execution in a manner which the law deems fraudulent as against other creditors, it was in vain that they told the sheriff "by no means to let their execution lose its preference." The sheriff has no discretionary power in that respect. The *law* determines the preference, &c. [See also, Doty v. Turner, 8 Johns. Rep. 20.]

In Benjamin v. Smith, [4 Wend. Rep. 332,] it appears that a *fieri facias* was issued and placed in the sheriff's hands on the 27th *February*, 1827; on the 9th *March* it was levied by a deputy who took an inventory, but was directed by the plaintiff in execution not to proceed further until *July*, when defendaut promised to pay it. In *August*, the deputy and the plaintiff had a conversation about the business, which was calculated to induce the former to expect further directions before he proceeded to close the execution. In *October* an execution was issued against the same defendant, and placed in the hands of another deputy, at the suit of a different plaintiff; under this execution, the pro-

Wood v. Gary, et al.

perty first levied on was removed from the house of the defendant, a few days previous to the 5th *January*, 1828, and sold on both *fi. fas.* on that day; having been previously advertised under the first, in the latter part of *December*—*The Court held,* that the first *fi. fa.* was dormant or fraudulent as it respected the second; though *generally* speaking, the mere delay of the officer, without countenance or direction from the plaintiff, will not superinduce such a consequence, yet the countenance or approval of the plaintiff will. [See also Benjamin v. Smith, 12 Wend. R. 404; Michie v. The Planters' Bank, 4 How. Rep. 130, and the cases cited in the arguments and opinion in the latter case; Russell v. Gibbs, 5 Cow. Rep. 390.]

If these decisions ascertain the law correctly, it seems to me to be perfectly clear, that a *fieri facias,* the collection of which is delayed by the act of the plaintiff, never acquires a lien upon the goods of the debtor as against a junior execution, or if it does the lien is gone as soon as the interference of the plaintiff commences, and will only become operative from the time the sheriff is required to execute its mandate. The process is mandatory, and requires the officer to make a sum of money of the goods and chattels, &c., of the defendant, and to have the money at a term therein designated, to render to the plaintiff, together with the writ, &c.: if the course of law is arrested by the direction or approval of the plaintiff, during all that time nothing is done towards enforcing the payment of the judgment, and the effect, in point of fact, is the same as if no execution had issued. The legal presumption is, that the plaintiff intended to favor the defendant, by suing out his execution; while he would obtain a lien prior to others, he would under its protection secure to the defendant the enjoyment of his property against subsequent executions. No matter how humane and benevolent the motives which might prompt to such a course, they would not relieve the elder execution from the imputation of being fraudulent in law. [Benjamin v. Smith, 4 Wend. Rep. 336.] "If," says Mr. Justice Marcy, in the case cited, "the application of legal principles were to be influenced in any considerable degree by the indulgence of sympathetic feelings, the uncertainty of the law would soon be subjected to a much more serious reproach than the sneer of those who are ignorant of the true character of the science of jurisprudence."

The law, in this respect, is not changed by the legislation of this State. The act of 1807, "concerning executions, and for the relief of insolvent debtors," [Aik. Dig. 165,] which declares that the goods of the defendant shall be bound only from the time, the *fieri facias* or other writ of execution shall be delivered to the sheriff, &c. "to be executed;" and that the time of the delivery shall be indorsed, is substantially, if not literally, a transcript of the 29th Car. II, ch. 3, sec. 16—[See Watson's Sheriff, 175–6.]

By the act of 1828, "relative to the satisfaction of executions," it is enacted, that "The lien created by the delivery of an execution from a court of record to the sheriff, shall continue to bind the property of the defendant, as between different judgment creditors in the courts of record in this state, in the following manner, viz: if a term shall elapse after the return of the first execution, before an *alias* shall be sued out and delivered to the sheriff, the lien created by the delivery of the first writ of execution shall be cancelled and of no avail; but if a term shall not have elapsed, and the *alias* shall be delivered to the sheriff, before the sale of property, under a junior execution in favor of another creditor, the lien shall continue, notwithstanding the *alias* may not have been delivered until after such junior execution; the sheriff may return an execution any time after its receipt, and thus excuse himself for a failure to make the money; if he were to do so, he would render himself liable to the plaintiff, if by retaining it to the proper day the money could have been collected. Here, the sheriff does not return the executions, because nothing could be made by holding them up; but because the plaintiff directs him to do so, and when, from the facts stated in the record, a part of the money at least could have been made. The order of the plaintiff to return the executions before they were returnable, must be regarded as equivalent to a direction not to levy; as they would thereby lose their energy, and the sheriff be thus deprived of all power to coerce payment. When the order of the plaintiff was given to the sheriff does not appear, but there was certainly ample time to have made a levy between the days when the return was, and when it should have been made; and the consequence is, that the executions of Miss Dillard became dormant and inoperative, for all purposes against an execution issued on a junior judgment, and levied, before the *alias fi. fas.* were issued in her favor.

Wood v. Gary, et al.

The practical construction of the act of 1828 has been, not to consider the mere intervention of a term between the return of an original *fi. fa.* and the suing out of an *alias*, as sufficient in itself to destroy the lien created by the delivery of the former to the officer; although such a result would follow from a literal interpretation of the statute. Whether this construction will abide the test of scrutiny, it is unnecessary to inquire, since under neither view of the act can the executions of Miss Dillard, so connect themselves with those which issued previously, as to continue the lien in her favor. If it were conceded, that the *fi. fas.* issued on the forthcoming bonds were not original executions, but were merely in continuation of those preceding them, and that the lien should date back to the time when the latter were received by the sheriff, still Miss D. would not occupy a more favorable situation. The executions on the bonds having become dormant, and in law, fraudulent, they are as if they had never issued; and consequently, there is no connecting link between those which first issued, and those which were levied on the property sold; and not only a term, but two terms, and a vacation elapsed, during which time no operative writs were in the sheriff's hands.— [*As to the continuation of a lien between execution creditors*, see 1 B. Monr. Rep. 210–11; Hood & Graham v. Winsatt, ib. 311; Million v. Commonwealth, &c.]

3. Under the act of 1807, which declares, the "execution shall bind the property of the goods against which such writ is sued forth," &c. it has been determined that in order to create a lien, the goods must be in the county to which the execution issued. The statute of 1828, is passed in reference to the act of 1807, and requires that the execution first issuing shall create a lien, as the condition on which the *alias* shall be entitled to priority of a *fi. fa.* on a different judgment, which is first delivered to the officer to execute. This is clearly shown by the first clause of the section cited. As it respects the merchandize, it is admitted that it was not in the county of Sumter until after the *alias fi. fas.* in favor of Miss Dillard were placed in the hands of the sheriff; consequently, none of the previous executions at her instance, acquired a lien on them. So that conceding Miss D's executions were entitled to all the efficacy which it is possible for such process to exert, and the *alias fi. fas.* cannot overreach and defeat the lien of the plaintiff. But in considering the second point, I

have shown that the executions on the bonds became dormant and inoperative as against the plaintiff; and consequently cannot aid the *alias fi. fas.*, so as to impart to them a lien which they did not possess themselves. The lien of an *alias* is a mere continuation of the effect of the orginal when a retro-active influence is claimed for it; and where the original is productive of no lien, of course none can be transmitted, but the *alias* must be alone looked to in a controversy between different plaintiffs in execution. Taking this to be the law, and it is clear that the lien of Miss Dillard and the plaintiff attached upon the merchandize at the same instant of time; as the executions of both of them were in the sheriff's hands when it was brought into the county. As it respects the other property sold, both real and personal, the lien of the plaintiff was paramount to that of Miss D. Even as to the land, the lien of her judgments was postponed by allowing her executions to become dormant, or by not enforcing a collection with diligence. [Mansony & Hurtell v. The U. S. Bank and its assignees, at this term.] And as it respects the personal property the judgments cannot be looked to, in determining the question of the prior lien of the executions. In every view in which the case can be considered, I am of opinion, that the judgment of the Circuit Court is erroneous; that it should be reversed, and the cause remanded.

ORMOND, J.—This is a contest between the rival executions of the plaintiff in error and Miss Dillard. The *judgments* of Miss Dillard were first obtained, and she has the superior *lien* on the property of the defendant in execution, unless it has been lost by her direction to the sheriff on the 25th March, 1841, to return the executions, the proper return day being the ensuing first Monday of April. This direction, it is contended, will render the execution "*dormant.*"

We understand the law on this subject to be, that if a judgment creditor place his execution in the sheriff's hands, *with instructions* not to levy, or after a levy, to hold it up and not to sell, it will be constructively fraudulent against junior judgment creditors, who will thereby obtain the superior lien. The rule is, that the plaintiff can only employ his execution to collect his judgment; he cannot use it as an instrument for sheltering or covering the property

of the defendant, against the claims of others, and any act which manifestly has this tendency is *per se* fraudulent.

This is, we think, the clear result of the adjudged cases. In Lovrick v. Crowden, [8 B. & C. 132,] there was a seizure of goods by the sheriff, and gross delay in the sale, by the direction of the plaintiff; the Court held, that a subsequent judgment creditor might treat the first execution as fraudulent and void.

In Kempland v. Macauley, [Peake, 66,] a *fi. fa.* was delivered to the sheriff with directions not to levy until a future day, and in the meantime, another writ was delivered to him; the Court held, that the second writ must be executed as if he had not received the first.

In Kellogg v. Griffin, [17 Johns. 274,] a *fi. fa.* was delivered to the sheriff, with directions to levy, but not to sell, unless crowded by younger executions; but not to let it lose its preference. The sheriff merely took an inventory; it was held fraudulent and void against an execution issued four months afterwards on a junior judgment.

So when ponderous articles levied on, were permitted to remain with the defendant (as firewood,) which the defendant was permitted to consume; held, fraudulent as against a junior judgment creditor. [Farrington v. Sinclair, 15 Johns. 428.] So also, if by the direction of the plaintiff, goods are levied on, and suffered to remain with the defendant, for more than a year; [Dickinson v. Cook, 17 ib. 332.]

But to render an execution *dormant,* or in other woods fraudulent, there must be some act of the plaintiff inconsistent with the pursuit of the defendant by execution to obtain satisfaction of the judgment. Thus, the mere delay of the plaintiff in not compelling the sheriff to levy and sell, will not raise the presumption of fraud, as is shown in Russell v. Gibbs, [5 Cowen, 390] where the previous cases of Whipple v. Foot, [2 Johns. 416] and Storm v. Woods, [11 ib. 110,] are cited as asserting the contrary doctrine, and disapproved of. To the same effect are Kerr v. Barber, [3 Cow. 279,] and Benjamin v. Smith, [4 Wend. 332.] And see Doty v. Turner, [8 Johns. 20,] where it was held that to produce this result, there must be instructions from the plaintiff to delay the seizure, or to let the executions sleep in the sheriff's hands.

We are unable to percieve that the act of Miss Dillard, in directing the sheriff to return the executions a few days before the

proper return day, can be considered as constructively fraudulent. No consequences injurious to any other creditor could, by possibility, flow from this act; so far from covering the property of the defendant, it left it exposed to a levy from any other execution. If, however, the plaintiff should direct an execution to be returned when it might have been satisfied, to favor the defendant in execution, it would doubtless be a fraud on other creditors; but such is not the legal presumption, from the mere fact of directing the return to be made, nor indeed is it easy to conceive how any such consequence could proceed from the act, for as already stated the immediate consequence attending it, was to leave the property of the defendant exposed to a levy from any other execution.

Our statute authorising the issuance of another execution, if the first "be not returned and executed," evidently contemplates that the plaintiff may require the return to be made before the return day. This indeed might be necessary, if the plaintiff wished to send an execution to another county, without incurring the additional expense; and it cannot be supposed that the exercise of this right would involve the loss of all *liens* acquired under the execution. Our conclusion, then, on this point is, that the mere fact of directing the return to be made before the return day, is not *per se*, evidence of a fraudulent intent.

The execution of the plaintiff in error, came to the sheriff's hands, 1st April 1841, and the *alias* executions of Miss D. not until the 19th May, afterwards; but as her executions had not, in contemplation of law, as we have seen, lost their *liens* by the returns she directed to be made, and were re-issued without the lapse of a term intervening, and before the sale of the property levied on, by the express terms of the statute, [Aik. Dig. 166, § 38,] the *liens* of her executions are superior to that of the plaintiff in error, at least as to all the property of the defendant, then in Sumter county.

It further appears that some merchandize, the property of the defendant in execution, was not brought into the county of Sumter until after the *alias* executions of Miss Dillard came to the sheriff's hands.

Independent of our statute regulating the priority of *liens* between different judgment creditors, we should be inclined to think the legal rights of both creditors in such a case, precisely equal, as the *lien* of an execution, does not extend beyond the county to

which it is issued. The statute already referred to, cuts the knot and solves this, as it was no doubt intended to solve all similar difficulties between rival executions, by expressly giving the preference to the oldest execution, which had been regularly issued without the lapse of a term. Nor is the rule a mere arbitrary one, not founded in equity and justice; it is merely carrying out the idea of rewarding the most diligent. The statute in effect, connects the execution when regularly issued with the judgment, and in such case gives, as it professes to give, the preference to the *senior* judgment creditor. Without the aid of this statute, if lands had descended to a defendant against whom were several judgments, the eldest would take it. So a judgment creditor becomes entitled to all the acquisitions of personal property made by the debtor, and the statute merely declares that it shall accrue to the benefit of the *oldest* judgment creditor who has preserved his *lien*.

It appears from the record, that after satisfying the executions of Miss Dillard, there was still a surplus in the sheriff's hands: for this amount the plaintiff was entitled to a judgment, and for the error of the Court, in not rendering judgment for that sum, the judgment of the Court below must be reversed and the cause remanded.

GOLDTHWAITE, J.—I concur in the conclusions expressed by my brother ORMOND.