## Foute, use of Ball, Appellant, *v.* Campbell.

A stay of execution which expires before the recovery of a subsequent judgment against the same defendant, does not affect the lien of the elder judgment.

An elder judgment creditor does not lose his priority of lien by mere delay, unless such delay should be under circumstances which warrant an inference of fraud.

APPEAL from the circuit court of the county of Hinds.

The appellee, Campbell, obtained a supersedeas to stay proceedings under an execution on a judgment obtained by appellant, on the ground that the execution had been satisfied, but that the money made by the levy had been improperly applied to the satisfaction of an execution in favor of the Planters' Bank.

The judgment in favor of the bank was rendered on the 15th of May, 1836, against James McLaran, a *fi. fa.* issued returnable to October, 1836, which was levied, and a forthcoming bond taken and forfeited. An execution issued on the bond against principal and surety, returnable to April term, 1837, which was quashed at the return term. An execution was again issued to October term, 1837, which was credited by the sum of three thousand one hundred and fifty-seven dollars, and returned "stayed by order of plaintiff." No other execution issued on this judgment until August, 1839, which was levied and property sold.

On the 29th of May, 1838, Foute recovered judgment against McLaran, on which a *fi. fa.* issued, returnable to October term, 1838, which was levied, and a forthcoming bond taken, in which the appellee, Campbell, became the surety, which bond was returned forfeited. An execution issued on the bond against McLaran and his sureties, returnable to April term, 1839, which was levied on the real estate of McLaran, and returned not sold for want of time, and *venditioni exponas* was issued returnable to October term, 1839. Before the sale under the *venditioni exponas*, the execution in favor of the Planters' Bank came to the

hands of the sheriff, which he also levied on the same property, and sold under both executions on the 8th of October, 1839, and applied the proceeds to the satisfaction of the execution in favor of the Planters' Bank; and of this appropriation Campbell complained, and it is now insisted that the bank by staying the execution lost the lien.

G. S. YERGER, for appellant.

The sale took place under all the executions; the proceeds must of course be applied to each judgment, according to its priority of lien.

The Planters' Bank judgment was the oldest, and the money was properly applied to it, unless this lien was lost by the stay given on the former execution.

It is unquestionably true, that if a judgment creditor stays his execution, that it will be, as against other creditors who are in a situation to be injured by the stay, fraudulent. Therefore, as to all creditors who acquired liens or judgments during the stay, the lien would be lost. That was the case of Michie *v.* Planters' Bank, 4 How. Rep. 130; Newell & Pierce *v.* Hamer, 4 Howard. But clearly, when there is no creditor to be injured, when there is no judgment or lien but one judgment in favor of the bank, they may indulge the debtor by staying the execution.

In this case the bank only stayed the execution returnable to November term, 1837. Her hand was not staid after that term; she might have issued an execution at any time after that, if she thought proper, and the fact that she did not do so for a time does not take away or destroy the lien. Rankin *v.* Scott, 12 Wheat. Rep. 177; Andrews *v.* Wilkes, 6 How. Rep. 554. The judgment of Foute was not obtained until 28th May, 1838. How was he injured by the stay on the Planters' Bank judgment, which stay expired six months before his judgment was obtained, and on which judgment of Planters' Bank an execution could have issued at any time after November term, 1837? See Green *v.* Allen, 2 Wash. C. C. Reports, 280; Scribe *v.* Dennis, 1 Brock. 166, 168; 2 Brock. 252; 3 Wash. Rep. 60.

It is believed no doubt can exist in the case, and that the court below erred in not discharging the supersedeas.

Foute, use of Ball, Appellant, *v.* Campbell.

The stay of the execution applied only to the *fieri facias* returnable to November term, 1837, and did not extend farther. The bank gave no order staying proceedings after November term, and the clerk ought to have issued an *alias fieri facias* without waiting for express instructions so to do. The bank was under no obligation to delay any given time, and mere indulgence does not operate a relinquishment of lien. The levy of Foute's execution was not an absolute satisfaction of the judgment, because the property levied on was subject to a prior judgment, and was not sufficient to satisfy both.

SLOANE for appellee.

Numerous authorities might be cited, going to show that the judgment of the bank had thereby lost its priority of lien, and that the stay rendered it dormant and fraudulent as against the judgment of Foute; but we rely upon the decision of this court in the case of Michie *v.* The Planters' Bank as conclusive on this point. See 4 Howard, 130.

What, then, was the attitude of the parties on the 20th of May, 1839? The appellant occupied the ground of a prior judgment creditor. His lien had become specific on the land by virtue of the levy, whilst the judgment of the bank was yet sleeping; and was, as against the appellant, to all intents and purposes a junior judgment. The sheriff could not have made a second levy. When an officer has once levied on property sufficient to satisfy the execution, he cannot make a second levy. Hoyt *v.* Hudson, 12 John. Rep. 209. Nor could another execution have issued in that case until the property levied on had been disposed of by sale. Accordingly, a writ of *venditioni exponas* did issue, under which the property was sold.

"Execution is the end of the law." It is "a putting the sentence of the law in force." The execution of the judgment was consummated by making the money. The *fi. fa.* became *functus officio*, and the judgment satisfied. The attempt on the part of the sheriff to retain in force against McLaran, Porter and Campbell a judgment once satisfied, under any pretext whatever, was a fraud upon them. It is true that the *fi. fa.* in favor of the bank came to his hands about two months after the issuing of the *ven-*

*ditioni exponas*, but Porter and Campbell were not parties defendants, in the judgment of the bank, and the sheriff was bound to disregard it in applying the money, except so far as there was a surplus in his hands.

In the case of Ladd *v.* Blunt, 4 Mass. Rep. 403, chief justice Parsons says: "Where goods sufficient to satisfy the judgment are seized on a *fieri facias* the debtor is discharged even if the sheriff waste the goods, or misapply the money arising from the sale, or does not return his execution."

Suppose Foute had been the plaintiff in both the judgments against McLaran, who is a defendant in common in both cases, yet he could not have elected as to which should have been satisfied. And why? Because Porter and Campbell were parties in the one and not in the other, and he was bound to see that the one which held priority of lien was first satisfied. Otherwise the grossest frauds might be practised by sheriffs in collusion with plaintiffs; and it would also put it in the power of judgment creditors to select their victims, and to gratify their avarice or caprice, by exhausting the means of the principal judgment debtor in full satisfaction of a judgment in which the surety was a party defendant, and by still holding in force the judgment against such surety, under the pretence of applying the funds to the satisfaction of another in which such surety was no party.

The fact that there are different plaintiffs in the two judgments cannot change or affect the rights of the several defendants. The levy of Foute's execution afforded a full security for the payment of the debt, and he could not abandon that security and still hold the surety liable. It was the duty of the appellant to see that his judgment was satisfied. This he failed to do, and the appellee has a right to apply to the court to have satisfaction entered of record or obtain a perpetual stay of execution. See the cases of Wood *v.* Torrey, 6 Wendell, 563; Hoyt *v.* Hudson, 12 J. R. 207; Smith *v.* Page, 15 J. R. 395.

The writ of *audita querela* was formerly the proper remedy to relieve a defendant from an execution, where the matter of discharge has been subsequent to the judgment. That writ has been substituted in modern practice by motion. 5 Rand. Rep. 639.

In support of the position first assumed, it is not contended that

Foute, use of Ball, Appellant, *v.* Campbell.

mere delay on the part of the clerk to issue, or of the sheriff to levy a *fi. fa.* under a prior judgment would postpone the plaintiff's lien. But where the delay is occasioned by the positive order of the plaintiff, it can make no possible difference as to its effect upon a junior judgment creditor, whether such stay is for a definite time, or until countermanded by the prior judgment creditor.

It will be observed that the *fi. fa.* of the bank was ordered by it sometime after the writ of *venditioni exponas* in favor of Foute had issued. In fact the bank was induced to countermand, it seems, by noticing the advertisement for the sale of McLaran's property under Foute's execution. Now what advantage was afforded a junior judgment creditor, by the power which the bank might have exercised in ordering execution of its judgment at an earlier period, when its order to stay was equally binding on the officers of court in the mean time? The following authorities are cited in support of this position. Benjamin *v.* Smith, 4 Wendell 332; 12 Wendell, 405; 17 J. R. 274; 8 John. R. 20; 3 Cowen R. 280; 5 Wendell, 392.

DABNEY on the same side.

The case of Green *v.* Allen, 2 Wash. C. C. Rep. 280, establishes that if a levy be made on land, the lien is not lost by a stay of proceedings. But the Planters' Bank had no levy previous to the stay, and the case is no authority for the plaintiff. But it is an authority for the defendant, in establishing that a levy on land creates a specific lien. The levy of Foute's execution was made on the 20th May, 1839, and became a matter of record by the return of the sheriff.

Scribe and others *v.* Deans *et al.* 1 Brock. 166, is also in favor of the defendant. The manner in which Allan's judgment lien is disposed of makes the authority very strong.

In Bank of the United States *v.* Winston's Ex'ors, 2 Brock. 252, the court expressly declines a decision of the question whether the proceedings of the first judgment creditor amount to a stay of execution. And that creditor being the commonwealth of Virginia, whose claim could not be prejudiced by lapse of time, (vide Nimmo's Ex'or *v.* The Commonwealth, 4 H. & M. 57,) an analo-

gy can scarcely exist between that and other cases. It is seldom, too, that any case from the Virginia courts can be made applicable to the subject of judgment liens on lands in this state. In that state the lien of a judgment is enforced by *elegit* only, and that must issue within a year and a day, unless the commonwealth be the plaintiff.

Berry *v.* Smith, 3 Wash. C. C. Rep. 60, is deemed conclusive for the defendant, so far as the authority of that court is recognized here. The stay there was indefinite, and might be countermanded at any moment. In the principal case, the order of stay is not in the record, and was not in the power of the defendant. But the instruction to the attorney to renew the execution, recognizes that it had been stayed, by order of the plaintiff, to that period.

Andrews *v.* Wilks, furnishes no argument for the plaintiff, unless it be considered as overruling the principle settled in Michie *v.* Planters' Bank, 4 How. 430, which is expressly disclaimed by the court.

A writ of *fieri facias* commands the sheriff to levy on the property of the defendant. The land levied on for satisfaction of the Planters' Bank *v.* McLaran, had already been levied on for Foute's execution, and a *venditioni exponas* issued, commanding the sheriff to sell that specific property, and for the satisfaction of his judgment. McLaran had not, at the time when the Planters' Bank execution issued, more than an equity of redemption in that property; and the sheriff had no right to levy it on the land, even as a junior judgment.

The plaintiff was not entitled to have any execution levied on the property of the defendant in error, independently of the circumstances that surround this case. The fact that the defendant is a surety, and so proved by the record, made an affidavit necessary as a previous step. Stat. of May, 1837; Code of 1838, p. 517; H. & H. p. 596, sec. 38.

Mr. Chief Justice SHARKEY stated the case and delivered the opinion of the court.

On this state of facts the question arises, did the stay given by the bank, and the failure to sue out execution for two years thereafter, amount to a waiver of their judgment lien, or a fraud on the

Foute, use of Ball, Appellant, *v.* Campbell.

rights of subsequent judgment creditors, such as to entitle them to prior satisfaction. It will not be denied that, by giving a stay of execution, an older judgment creditor may postpone his lien. So it was held in the case of Michie *v.* Planters' Bank, which has been referred to. The reason of the rule of law seems to be to prevent property from being covered by a fictitious lien, or by a judgment creditor who uses his lien for the benefit of the defendant, to the prejudice of other judgment creditors. Where the facts will not justify the inference that the judgment was fraudulent, or, being *bona fide*, that it is fraudulently employed to protect the defendants' property against other judgment creditors, it would seem that the rule of law could have no just application.

It must be remembered that the stay given in this instance was before Foute had obtained judgment; it could not, therefore, have been fraudulent as to him, unless the stay, by its terms, was operative after his judgment was obtained. The execution on which the stay was indorsed was returnable to October term, 1837, and it was not continuous in its character. It cannot be construed as extending to any other execution than the one on which it is indorsed, and, immediately after the expiration of that term, the bank might have sued out another execution, without violating the order or promise to stay. Suppose, then, that the lien was suspended during the stay, the suspension ended with the stay, and the lien was revived. How could Foute avail himself of a suspension which had expired before his lien accrued? As to him, such delay was not fraudulent, for he had no lien to be affected, his judgment having been rendered on the 29th of May, 1838, and the stay having expired at October term preceding. To hold, therefore, that this stay was fraudulent as to Foute, would be at once to decide that no plaintiff could stay his execution without surrendering his lien in favor of any one who might subsequently recover a judgment against the same defendant. We think, therefore, that the stay given cannot operate as a forfeiture or postponement of the lien in favor of Foute; and this leaves the case to depend on the single point, did the delay to sue out execution let in the judgment of Foute and entitle it to satisfaction?

On this question, Chief Justice Marshall was very explicit, in the case of Rankin *v.* Scott, 12 Wheaton, 177. He held, that

mere delay in suing out execution had never, of itself, been regarded as a sufficient reason for letting in a junior judgment. In the case of Michie *v.* The Planters' Bank, the stay was regarded as a continuous one, which had never been revoked until Michie had levied his execution. The case was decided on the ground that the lien had been lost by the positive act of the party in giving and continuing the stay. The question involved underwent a very full investigation in the case of Russell *v.* Gibbs, 5 Cow. 390, and, after reviewing all the cases which had been decided in New York, the chief justice came to the conclusion that, in all cases of this description, there must be some act of the plaintiff authorizing the delay, otherwise the lien cannot be regarded as dormant. This rule was fully recognized afterwards, in 4 Wend. 332. In the case of Green *v.* Allen, 2 Wash. C. C. Rep. 280, it was held, that a judgment lien on real estate was not lost by giving a stay after a levy. The case referred to in 3 Wash. C. C. Rep. is not analogous. The lien was held to have accrued by virtue of the delivery of the writ to the sheriff, and it was considered that the lien was removed by the act of the plaintiff after a levy on personal property. By the levy the property was changed, and by the stay the property was restored; the party having undone what the officer had done. The purposes of the delivery of the process to the sheriff were defeated by the party himself, and, being a positive removal of the lien, it left the property open for other liens to attach immediately. It is obvious that the court considered the case as turning on the act of the party, and not on a failure to act.

I am not prepared to say that mere delay would not, in any case, operate to postpone the lien. Delay, which evidently shows a design to protect the property against other *creditors,* or which is continued until other judgment creditors have enforced their executions by levy and sale, would amount to fraud; but it must be such a delay as would justify the inference of fraud. It is impossible for a court to say what lapse of time would justify such an inference. To do so would be to fix a statute of limitations. Each case must, of necessity, depend upon the particular circumstances attending it. In some cases a very short delay, attended

by suspicious circumstances, might superinduce a preference in favor of junior judgments.

There is one circumstance in this case which countervails the presumption of fraud. On the execution which was stayed, the sheriff indorsed a credit of thirty-one hundred and fifty-seven dollars; the object was not, therefore, mere protection; this payment may be regarded as at least some evidence of the real character of the judgment. The bank had regularly sued out its executions until this payment was made, and it is difficult to account for such vigilance on any other supposition than that it was determined to obtain a satisfaction. The subsequent delay looks more like the result of accident, or mere omission, than design.

The judgment must be reversed and supersedeas discharged.