Newsom and others *vs.* McLendon and others.

---

No. 51.—JOEL D. NEWSOM and others, plaintiffs in error, *vs.* JESSE McLENDON and others, defendants in error.

[1.] The levy of an execution on personal property, is a satisfaction, so far as to throw upon the plaintiff the burden of proving, either that it was insufficient, or that its proceeds were applied to the extinguishment of prior liens, or that it was otherwise unproductive, and made so without fault in the plaintiff, or the levying officer.

[2.] A levy upon personal property, sufficient to pay the debt, which is dismissed by the plaintiff, with the consent of the defendant, extinguishes the judgment, so far as third persons may be affected by it.

[3.] Payment of a joint debt, by one of two defendants, against whom several judgments have been rendered, extinguishes both judgments.

[4.] If A holds a demand against B & C, as partners, and C is dead, and there are effects of the firm in the hands of B, the surviving partner, sufficient to pay the debt, and D holds property conveyed to him by C, to indemnify him as surety for C, *upon the equities subsisting between B & C*, Chancery will compel A to proceed against the property in the hands of B, the surviving partner, so as to leave the property conveyed to D, to be applied to his remuneration, as surety for C.

Application for an injunction, in Troup Superior Court. Decided by Judge HILL, at Chambers, 30th September, 1848.

This was a bill for discovery and injunction, in favor of plaintiffs in error, against the defendants in error, and presented to Judge *Hill* for his sanction. The bill alleged, that as securities for one Wilie Wormack, plaintiffs in error had been compelled to pay large sums of money; to secure and save harmless against said securityships, the said Wormack conveyed to plaintiffs in error, in 1840, the premises upon which he then lived.

That Wormack and one Jesse McLendon, previous to the making of the conveyance, were partners in merchandize, and that they executed their note to one Thos. C. Brown, by signing thereto their individual names; and that the property for which the note was given, became the property of the partnership.

That during the existence of the partnership, Jesse McLendon had the entire control and charge of the effects thereof; and that upon its dissolution, all the goods, notes and accounts, &c. of the partnership, and particularly the property for which the note was given to Brown, went into the hands of the said Jesse, and he assumed the entire charge thereof.

That Brown obtained, before the execution of the said conveyance from Wormack to plaintiffs in error, separate judgments upon the note against Wormack and Jesse McLendon; that an execution issued upon the judgment against Jesse McLendon, and was levied upon a large amount of property, sufficient to have satisfied the same; for the forthcoming of which, on the day of sale, a bond was given.

That before the day of sale, Freeman McLendon and Jeremiah McLendon, (who has since departed this life, and the said Freeman appointed his executor,) with the assistance of, and for the pur-

pose of enabling Jesse McLendon to have and to hold all the effects of the said partnership, to his own use, paid off the said *fi. fa.* and from Brown took a transfer thereof, and also an assignment of the judgment against Wormack.

That Freeman and Jeremiah McLendon afterwards dismissed the levy made and entered upon the *fi. fa.* against Jesse McLendon, and caused an execution to issue on the judgment against Wormack, and to be levied upon the premises conveyed by Wormack to plaintiffs in error.

That Wormack afterwards died, wholly insolvent, whereby Jesse McLendon became surviving co-partner; and that a sufficient amount of the said partnership funds were in his hands, to pay off the said debt; and that Jesse McLendon himself is perfectly solvent and able to pay the said debt.

The bill charges, that at the time of the transfer of the *fi. fa.* against Jesse McLendon, from Brown to Freeman and Jeremiah McLendon, Jesse McLendon furnished a large portion of the money paid thereon, and that subsequently he has refunded to Freeman McLendon, and to the said Freeman, as executor, the amount advanced by the said Freeman and his testator upon the said *fi. fa.*

That complainants are unable to prove the material facts charged in their bill, other than by a resort to the consciences of the defendants.

The bill alleges that complainants have interposed their claim to the property transferred to them by Wormack, and levied upon by the execution against Wormack, and that the same is now pending upon the appeal in Troup Superior Court.

The bill prays for a perpetual injunction, to restrain the collection of the judgment against Wormack, out of the property conveyed by him to plaintiffs in error, and that in the meantime the assignees of the judgment may be restrained from proceeding in the claim case.

Judge *Hill* refused to sanction the bill; to which opinion and decision of the Court below, counsel for plaintiffs in error excepted.

W. DOUGHERTY, for plaintiffs in error.

O. A. BULL, for defendants.

His Honor, Judge *Warner*, having been of counsel in the Court below, gave no opinion in this case, in the Supreme Court.

*By the Court.*—Nisbet, J. delivering the opinion.

[1.] We think that the injunction in this case ought to have been granted, upon several grounds. First, because the bill charges, distinctly, that the execution in favor of Brown against Jesse McLendon, had been levied upon personal property belonging to him, sufficient to pay the debt, which was dismissed by the assignees of that execution. That levy, and the dismission of it, was a *prima facie* satisfaction, and discharged Wormack, the co-debtor with Jesse McLendon. Beyond all question, it discharged the judgment against Wormack, in favor of the complainants, who are sureties for Wormack, holding property conveyed to them by him, for their protection—against which property the assignees are proceeding. Again, the bill charges a fraudulent combination between the assignees of the judgment and Jesse McLendon, to get control of both the judgments, and dismiss the levy on Jesse McLendon's property ; and all to benefit Jesse McLendon, by forcing the money out of Wormack.

In this case, there was, as the bill charges, a partnership debt contracted by Wormack & McLendon, for which they individually gave their note ; suit was brought separately against both, and carried to judgment. The execution on the judgment against McLendon, was levied on his personal property, sufficient to pay it. Pending the levy, it was assigned. The assignees dismissed the levy. If this levy was a satisfaction of the debt against McLendon, it was also a satisfaction of the judgment against his partner and co-debtor, Wormack. The plaintiff can have but one satisfaction. Of this, there is no doubt. Nor is it questioned, that the assignees occupy no better position than the plaintiff himself would occupy. Any act done by them, which, if done by the plaintiff himself, before assignment, would discharge the judgment, would discharge it in their hands.

We state the general principle to be this : a levy is a satisfaction of the execution, so far as to throw upon the plaintiff the burden of showing, either that it was insufficient, or that the proceeds were applied to the satisfaction of prior liens, or that it was

otherwise unproductive, and made so without fault of the plaintiff or the Sheriff. *Curan vs. Colbert,* 3 *Kelly,* 249. We are aware of the necessity of guarding this rule carefully. Hence, we state that a levy dismissed by the plaintiff, with the consent of the defendant, is no satisfaction or discharge, so far as he alone is concerned.

[2.] In that event, it would be a satisfaction, so far as third persons are concerned, as sureties, junior judgment creditors or purchasers from the defendant. 5 *Hill's N. Y. R.* 377. 2 *Ib.* 364. 11 *Johns. R.* 110. 17 *Ib.* 274. 4 *Wend.* 332. 5 *Conn. R.* 392. Nor can I doubt but that a levy made on personal property of one partner, sufficient to pay the debt, and dismissed by the plaintiff, with the consent of the defendant, would discharge the other partner, as in this case.

I apprehend it is not to be questioned, that where a levy is made upon personal property, sufficient to pay the debt, it is *prima facie,* a satisfaction and discharge. If the defendant assents to the release of the levy, or anything can be shown by the plaintiff, in law or in fact, which, without fault on his part, renders the levy unavailable, the presumptions of law against him, growing out of the levy, are removed. The act of the Sheriff is not among those things which will prevent the operation of the rule. It is his duty to seize the property, and he acquires in it a qualified property. He may maintain trover or trespass, if it is taken from his possession. 2 *Saund. R.* 47, *and note* 1. 1 *Lev.* 282. 1 *Sid.* 438. 1 *Vent.* 52. 1 *Mod.* 30. 6 *Ib.* 291. 6 *Johns. R.* 195. Such is the Common Law. In case of claims upon levy of attachment or execution by Statute, the Sheriff is required to take forthcoming bonds, payable to the plaintiff. In such cases, his Common Law liability, so far as it is affected by this bond, does not continue. In case of levy without claim, he *may* take a forthcoming bond also, but his liability to the plaintiff continues, by express statutory provision. *Prince,* 465. By virtue of his office as Sheriff, and his right as such to seize the property, and of his qualified property in it, he is liable to make good a sufficient levy to the plaintiff; and it is for these reasons that no act of the Sheriff, contrary to law, by which the levy is released or made unproductive, will prevent the operation of the rule, that a levy is a satisfaction.

Our Statute gives to the judgment a lien from its date. This does not affect the rule I am considering—it is the lien which is discharged.

In *Clark vs. Withers*, it was resolved by the Court, " that when a.Sheriff had seized, he was compelled to return his writ, and made himself liable at all events, (acts of God excepted,) to answer the value of the goods according to his return, and by the seizure the property was divested out of the defendant, and in abeyance."

" That the defendant was discharged, because the plaintiff having made his election, and the defendant's goods being taken, no farther remedy could be had against the defendant, but against the Sheriff only, &c." 1 *Salk.* 323. See also, 6 *Mod.* 292. 1 *Roll. R.* 57. 2 *Saund.* 47, *note* 1. In the United States, the Common Law on this subject has been very generally recognized. In *Peay, adm'r, vs. Fleming*, Judge *O'Neal* says : " A levy is, in legal contemplation, satisfaction of a *fi. fa.*; that is, it is presumptive evidence, that satisfaction may result or has resulted from it. But as soon as it is shown how the levy has been disposed of, and that satisfaction has not and could not have resulted from the levy, the legal presumption is rebutted, and the execution may be again levied, if it has not lost its active energy," &c. 2 *Hill's Ch. R.* 99. In *Davis vs. Barkley*, the Court of Appeals of South Carolina say : " It is a received rule, that a levy is satisfaction, at least, so far as to throw on the plaintiff the burden of showing, either that it was insufficient, or that the proceeds were applied to the satisfaction of some prior lien, or that it was otherwise rendered unproductive without his fault, or *the fault of the officer.*" 1 *Bailey*, 142.

In *Ladd vs. Blount, Parsons*, C. J. says : " When goods sufficient to satisfy the judgment, are seized on a *fi. fa.* the debtor is discharged, even if the Sheriff waste the goods, or misapply the money arising from the sale, or does not return .his execution. For by a lawful seizure, the debtor has lost his property in the goods ; but the law is different in case of an extent on lands." 4 *Mass.* 403. *Also*, 2 *Pick.* 586.

.In *Scribed, &c. vs. Deanes et al.* the Sheriff's return upon two *fi. fas.* was, that they were executed, and the property released by order of the plaintiff, in consequence of a compromise between the parties.

Chief J. *Marshall*, in reference to this return, said, " That this return determined the legal force of the judgments, is admitted. Of course, they no longer constitute a lien at law, on the lands of the debtor." 1 *Brockenbrough*, 171.

In *Denton vs. Livingston*, Ch. *Kent* said, " He, (the Sheriff,) is answerable for the amount of the sale of the sloop, and his excuse for not returning the money is insufficient. Instead of retaining the sloop in his possession, between the levy and sale, he delivered her to Ashley, the purchaser ; and as he afterwards sold her to him, and has lost the possession, he is answerable for the money she sold for. There is no other remedy for the plaintiffs. *They cannot call upon the original defendant, for the amount of the sloop, for he would plead this seizure in bar."* 9 *Johns.R.* 98.

In the *Ordinary vs. Spann, Mr. J. O'Neal* said, " A levy of a value equal to the debt demanded, undisposed of, is, in law, a satisfaction. This was fully adjudged in *Mayson vs. Irby & Day*, decided at *Dec. Session,* 1828, *in Columbia, in the Court of Appeals in Equity."* 1 *Richardson's Rep.* 434. See, also, *Mayson vs. Irby & Day, in a note to this case in Richardson.* In the latter case, *(Mayson vs. Irby & Day,)* the Court of Appeals say, " When a levy is once made, the execution is satisfied." If the Court there, however, mean to say, that a levy is, *per se,* and necessarily a satisfaction, we dissent from their rule ; holding it, as before stated, a legal presumption of satisfaction. See 23 *Wend.* 490. 1 *Watts & Sergt.* 251. 4 *Smedes & Marsh,* 118. 3 *Yerg.* 297. 6 *Ib.* 246. 6 *Ib.* 305.

To apply this rule to this case. The levy was made on personal property sufficient to pay the debt—unaccounted for, the presumption in law is that it was paid—but it is accounted for, because the bill charges, that it was dismissed by the assignees of the judgment and execution. It is, therefore, accounted for by *the fault* of the plaintiff's assignees. The dismissal is their own act. They have voluntarily parted with that which might have been productive to them of payment. *The levy and the dismissal was an extinguishment of the judgment.* Even if it were not as to the defendant, yet, in this case, it certainly is as to these complainants, because they are third persons affected by it. They are grantees of property held as sureties of Wormack, the co-debtor of Jesse McLendon. The effect of dismissing the levy is to bring the execution against Wormack down upon that property.

Now the question is, shall not the lien of that judgment be held to be extinguished in their favor ?   Are not the judgments against McLendon & Wormack nullities as to that property ?   As to that property, clearly the levy and its dismissal extinguished their liens.

The bill farther charges, that the purchase of these judgments and the withdrawal of the levy, was the result of a fraudulent combination between the purchasers and Jesse McLendon, for his (McLendon's) benefit, to free him from his liability to pay, and to coerce payment out of the property in the hands of claimants. If this levy was collusively dismissed by Jesse McLendon, the defendant, and the owners of the judgment, Chancery will protect third persons from injury thereby.   Upon these grounds the injunction should have been granted.

[3.] Farther, the bill charges that the judgment against Jesse McLendon has been paid, *in fact,* by him to the assignees.   It alleges, that a part of the money which was advanced by them to the plaintiff, Brown, in the purchase of the two executions against McLendon & Wormack, was furnished by Jesse McLendon, and that the balance, furnished by them, has been refunded to them ·by him, and, therefore, both executions are paid and extinct.   If this is true, (and for the purposes of the question whether the injunction ought to be granted, the statements in the bill are to be taken as true,) both executions are extinguished, and keeping the execution against Wormack open, is a fraud against him and the complainants.   And inasmuch as the complainants aver their inability to prove these facts on the trial, without a discovery from these persons, manifestly the claim cause should be enjoined until they answer.

[4.] But aside from all these views, there is an equitable principle which rules this case.   Before stating it, with a view to its application, it is desirable to advert to the facts as charged in the bill.

The bill states, that Wormack and Jesse McLendon were partners in trade, and as such, purchased property of Brown and gave their individual note for the purchase money ; that the property so purchased went into the concern; that this note was sued to judgment against each, severally ; but that the debt was a partnership debt—*a joint debt against Wormack and Jesse McLendon ;* that after these judgments were open, Wormack conveyed to the

complainants the property now levied on, as his individual property, to reimburse and indemnify them as his personal sureties; that Wormack died insolvent; that all the effects of the concern went into the possession of Jesse McLendon, the surviving partner, including the very property for which the note was given to Brown; and that the partnership effects in the hands of Jesse McLendon are amply sufficient to pay all the debts of the firm, these judgments included. These judgments became the property of purchasers, to whom they were assigned by Brown, the original creditor. Now, how stands the matter? Thus: the assignees are the creditors of Wormack & McLendon, holding a joint demand against them, and entitled, at law, to proceed against either of them for satisfactiom; the complainants are the creditors of one of them, (Wormack,) with no resource for payment but the property conveyed to them by him. Now, Equity will not, where one creditor holds a claim against two, and another holds a claim against one of those two, compel the former to proceed against that one of his joint debtors against whom the latter has no claim, in order that the funds of *his* debtor may be applied exclusively to the payment of *his* claim. I say, Equity will not generally do this, and will never do it for the sake of the creditor who has a single claim, but it will do it when *it is equitable as between the two debtors that it should be done.* Lord *Eldon,* in *ex parte, Kendal,* illustrates these two propositions thus : " We have gone this length—if A has a right to go upon two funds, and B upon one, having both the same debtor, and the funds are the property of the same person, A shall take payment from that fund to which he can resort exclusively, so that both may be paid ; but it was never said, that if I have a demand against A and B, that a creditor of B shall compel me to go against A, *without more.* If I have a demand against both, the creditors of B have no right to compel me to seek payment from A, *if not founded in some equity,* giving B, for his own sake, as if he was surety, &c. a right to compel me to seek payment of A. It must be established that it is just and equitable, *that A ought to pay in the first instance,* or there is no equity to compel a man to go against A, who has resort to both funds." 17 *Vesey,* 520. Lord *Eldon* laid down the rule and the exception. The exception is to be found in cases where "*it is just and equitable that A ought to pay in the first instance.*" Mr. *Story,* in stating the rule, names the very exception which

this case makes, to wit: where the debt, though joint *in form*, *ought to be paid by one of the debtors only.* *Story's Eq. Jurisp.* §642. *Here*, the debt to the assignees, though joint against Wormack and Jésse McLendon, because due from them as partners, yet ought to be paid by McLendon, because he is the surviving partner, into whose hands the effects have passed, they being at the same time ample to pay. Equity will compel the assignees of these judgments to go upon the partnership fund, and leave the fund to which the complainants can alone resort, to wit: the property conveyed to them by Wormack, to be applied exclusively to their demand against him. 4 *John. Ch. Rep.* 17, 20. To avail themselves of this equitable principle, the claim cause ought to be enjoined, particularly as they seek discovery as to the facts, and aver inability to prove them at law.

Let the judgment of the Court below be reversed.